956 A.2d 956

PENNSYLVANIA BANKERS ASSOCIATION and
the Pennsylvania Business Bank, Appellants

v.

PENNSYLVANIA DEPARTMENT OF BANKING and
TruMark Financial Credit Union, Appellees

Pennsylvania Credit Union Association and Corry Jamestown
Credit Union and Freedom Credit Union, Intervenors

Pennsylvania Bankers Association, Pennsylvania Business
Bank, Fulton Bank and Premier Bank, Appellants

v.

Pennsylvania Department of Banking, Pennsylvania
Department of Revenue, The Attorney General
of the Commonwealth, Appellees

Pennsylvania Credit Union Association and
Freedom Credit Union, Intervenors

Pennsylvania Bankers Association and the Pennsylvania
Business Bank, Appellants

v.

Pennsylvania Department of Banking, Appellees

Freedom Credit Union and Pennsylvania Credit
Union Association, Intervenors.

Supreme Court of Pennsylvania.

Argued March 4, 2008.

Decided Sept. 24, 2008.

Christopher R. Nestor, Esq., Raymond P. Pepe, Esq., Kirk-patrick & Lockhart, Preston, Gates, Ellis, L.L.P. Harrisburg,

for Pennsylvania Bankers Association, et al. (31, 32, 33 MAP 2007).

Carter David Frantz, Esq., Linda Carroll, Esq., PA Department of Banking, Harrisburg, for Pennsylvania Department of Banking (31, 32, 33 MAP 2007).

Daniel T. Fitch, Esq., Valentino F. DiGiorgio, III, Esq., Stradley, Ronon, Stevens & Young, L.L.P., Harrisburg, for TruMark Financial Credit Union, (31 MAP 2007).

Francis Crowley, Esq., Christopher Michael Guth, Esq., Blank, Rome, L.L.P., Philadelphia, for Freedom Credit Union, (31, 32, 33 MAP 2007).

Richard T. Wargo, Jr., Esq., PA Credit Union Association, for Pennsylvania Credit Union Association, (31, 32 MAP 2007).

Daniel T. Fitch, Esq., Harrisburg, for TruMark Financial Credit Union, (32, 33 MAP 2007).

Laurie Schnarrs Kennedy, Esq., Richard W. Wargo, Jr., Esq., Harrisburg, for PA Credit Union Association, (33 MAP 2007).

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## *OPINION*

Justice BAER.

This matter arises from a dispute between members of the banking industry, the credit union industry, and certain administrative agencies under the Pennsylvania Credit Union Code ("Credit Union Code"), 17 Pa.C.S. §§ 101–1504. As detailed later in this opinion, credit unions in Pennsylvania have historically organized their membership based upon common bonds of association, such as shared occupations. Effective February 2003, however, the General Assembly amended the Credit Union Code to follow the federal model, which, in addition to permitting association through common bonds, also allows membership to be organized by well-defined geographic communities or districts. Credit unions, including TruMark Financial Credit Union and Freedom Credit Union (collective-

ly, "the Credit Unions") sought to take advantage of this amendment and filed a notice with the Pennsylvania Department of Banking ("the Department") of their intention to convert to geography-based membership. The Pennsylvania Bankers Association, the Pennsylvania Business Bank, Fulton Bank, and Premier Bank ("Appellants" or "the Banks") protested the Credit Unions' proposed conversions, and were granted permission to intervene in an administrative proceeding before the Department, which was convened to consider the Credit Unions' proposals to convert to geographically-organized entities. Following the hearing, the Department granted the conversion of TruMark and Freedom, and revoked the Banks' intervenor status. The Banks then appealed to the Commonwealth Court, which affirmed the Department.[1] For the reasons that follow, we vacate the Department's order dismissing the Banks as intervenors, and remand to the Commonwealth Court for further proceedings consistent with this opinion.

Before taking up the facts of this case, a brief history of credit unions in Pennsylvania will provide necessary context. From their inception, Pennsylvania credit unions have been organized by common bonds of association,[2] as set forth in

1. As discussed later in this opinion, after losing before the Department, the Banks filed a Petition for Review in the Commonwealth Court raising original jurisdiction and appellate jurisdiction issues. *See* Pa. R.A.P. 1512(c) (providing that a petition for review of a determination of a government unit may be filed in the Commonwealth Court's original jurisdiction); *see also* Pa.R.A.P. 1512(a) (providing that a petition for review from a quasi-judicial order must be filed within 30 days of the order). Among the original jurisdiction issues raised were federal and state constitutional challenges to the tax-exempt status enjoyed by credit unions. When some, but not all, of these original jurisdiction claims were dismissed by the Commonwealth Court, the Banks appealed. We quashed that appeal as interlocutory in *Pennsylvania Bankers Ass'n v. Pennsylvania Department of Banking*, 35–36 MAP 2006, J–31A & B–2008 (Pa.2008) (*"Pa. Bankers I "*), holding that the Commonwealth Court had to dispose of all of the original jurisdiction issues before we would undertake review. In this case, we consider only the appellate jurisdiction issues that arise from the Banks' appeal of the Department's quasi-judicial order of December 22, 2004.

2. *See* the Credit Unions Act of 1933, *formerly* 14 P.S. §§ 201–226. The current Credit Union Code, 17 Pa.C.S. §§ 101–1504, was enacted in 1990.

each credit union's charter.[3] These common bonds include, for example, membership in a religious congregation, a labor organization, or a shared occupation. *See* 17 Pa.C.S. § 701 (specifying the types of common bonds on which membership can be based). As noted previously, however, the General Assembly amended the Credit Union Code, effective February 2003, by adding a provision, 17 Pa.C.S. § 501(e), that gives Pennsylvania credit unions the option of organizing membership by well-defined geographic communities, as permitted under the Federal Credit Union Code, 12 U.S.C. § 1759, rather than by common bonds.[4] According to the Banks, the

3. *See* Section 2 of the Credit Unions Act of 1933, *formerly* 14 P.S. §§ 201–226. A similar provision is included in the current Credit Union Code at 17 Pa.C.S. § 303, which states that a credit union's charter must specify the common bond of membership.

4. 17 Pa.C.S. § 501(e), titled "Federal Parity," provides:
 Notwithstanding any other provisions of this title or any other law . . . a credit union shall have the power:
 * * *
 (2) To engage in the activity of creating, amending or expanding its field of membership as authorized by section 109 of the Federal Credit Union Act (48 Stat. 1219, 12 U.S.C. § 1759), subject to reasonable conditions, limitations and restrictions as may be imposed by the department, including, but not limited to, conditions, limitations and restrictions based upon safety and soundness.
 * * *
 As referenced, 12 U.S.C. § 1759, titled "Membership," provides:
 (b) Membership field. Subject to the other provisions of this section, the membership of any Federal credit union shall be limited to the membership described in one of the following categories:
 * * *
 (3) Community credit union. Persons or organizations within a *well-defined local community, neighborhood, or rural district.*
 * * *
 (g) Regulations required for community credit unions.
 (1) Definition of well-defined local community, neighborhood, or rural district. The Board shall prescribe, by regulation, a definition for the term "well-defined local community, neighborhood, or rural district" for purposes of—
 (A) making any determination with regard to the field of membership of a credit union described in subsection (b)(3); and
 (B) establishing the criteria applicable with respect to any such determination.
 (2) Scope of application. The definition prescribed by the Board under paragraph (1) shall apply with respect to any application to

expanded membership afforded by 12 U.S.C. § 1759 and 17 Pa.C.S. § 501(e) provides credit unions with an unfair competitive advantage, given that credit unions, which historically have been non-profit, cooperative entities organized for beneficent purposes, are exempt from most taxation, while Banks remain fully subject to taxation.[5]

The present dispute arose in 2003, when state-chartered credit unions, including TruMark and Freedom, filed notices with the Department seeking to reorganize their fields of membership by geographic communities. In response, the Banks submitted letters of comment and protests, opposing the Credit Unions' proposals. On April 3, 2004, the Department published a notice in the *Pennsylvania Bulletin* stating that the Credit Unions' proposals presented novel and complex issues of unprecedented scope, and therefore, the Department had decided to hold a consolidated hearing pursuant to 17 Pa.C.S. § 503(A.2) of the Credit Union Code.[6] 34 Pa.B. 1806. The notice also stated that the hearing would be

form a new credit union, or to alter or expand the field of membership of an existing credit union that is filed with the Board after the date of enactment of the Credit Union Membership Access Act.
12 U.S.C. § 1759 (emphasis added).
As noted, a "well-defined local community" is the primary requirement for converting to geography-based membership. The criteria for determining whether a well-defined community exists is explained in the "Chartering and Field of Membership Manual" published by the National Credit Union Association (NCUA). R.R. 808a. This manual provides, *inter alia:* 1) the boundaries of the geographic area must be clearly defined; 2) the area must be a well-defined neighborhood, rural district, or local community; and 3) the community's individuals must interact or share a common interest.

5. 17 Pa.C.S. § 517 states: "A credit union ... shall be deemed an institution for savings, and its assets, together with all the accumulation therein, shall not be subject to taxation except as to real estate owned by it...."

6. Section 503(A.2), titled "HEARINGS AND SUBPOENAS," provides:
(1) The department may conduct administrative hearings on any matter pertaining to this title, subject to the provisions of 2 Pa.C.S. Chs. 5 Subch. A (relating to practice and procedure of Commonwealth agencies) and 7 Subch. A (relating to judicial review of Commonwealth agency action).
17 Pa.C.S. § 503(A.2).

governed by the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa.Code Part II, and invited interested persons meeting the eligibility criteria set forth at 1 Pa.Code § 35.28(a) to submit petitions to intervene by April 16, 2004.[7]

The Banks filed timely petitions to intervene, claiming that they met the criteria set forth in 1 Pa.Code § 35.28(a)(2) (henceforth, "the direct interest prong") because they were competitors of the Credit Unions, they would be harmed by direct competition with entities enjoying tax-exempt status, and no other entity would adequately represent the Banks' interests. The Credit Unions filed answers denying that the Banks had a direct interest, and arguing that unfair competition was not a relevant factor for determining eligibility to intervene under any of the subsections of § 35.28(a). *See supra* note 7. Moreover, the Credit Unions made a cursory assertion that, to satisfy the direct interest prong, the potential intervenor must not only have a direct interest, but must be bound by the agency's action.[8]

7. Section 35.28, titled "Eligibility to intervene," provides:
 (a) Persons. A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:
 (1) A right conferred by statute of the United States or of this Commonwealth.
 (2) An interest which may be directly affected and which is not adequately represented by existing parties, and as to which petitioners may be bound by the action of the agency in the proceeding. The following may have an interest: consumers, customers or other patrons served by the applicant or respondent; holders of securities of the applicant or respondent; employes of the applicant or respondent; competitors of the applicant or respondent.
 (3) Other interest of such nature that participation of the petitioner may be in the public interest.
 ❉ ❉ ❉
 1 Pa.Code § 35.28.

8. The Credit Unions' argument that the Banks would not be bound by the Department's decision was not well developed. As detailed in the body of this opinion, because the Department ultimately granted intervention to protect the public's interest, pursuant to subsection § 35.28(a)(3), instead of the direct interest prong articulated in § 35.28(a)(2), and herein we overturn the Department's vacation of the

On May 4, 2004, the Department entered an order granting the Banks' intervention petitions, thereby making them parties to the proceedings. *See* 1 Pa.Code § 35.24 (stating that a petition to intervene is required to obtain party status). However, notwithstanding that the Banks had argued that they met the requirements of the direct interest prong, the Department's order granted intervention pursuant to § 35.28(a)(3) (henceforth, "the public interest prong"), which provides that intervention may be granted where the petitioner possesses an "interest of such nature that participation . . . may be in the public interest." In addition, the order granting intervention indicated that limitations could be subsequently imposed, pursuant to 1 Pa.Code § 35.31(b).[9] However, the Department did not specify what limitations might be later imposed; nor did it indicate that it was permitting only tentative participation by the Banks. As delineated in note 9, while 1 Pa.Code § 35.31(b) provides a process whereby an agency can tentatively grant participation in a proceeding subject to a subsequent grant or denial of a petition to intervene, the Department did not do this. Instead, it granted the Banks full intervenor status under the public interest prong.

The case then proceeded to a consolidated hearing, during which the Credit Unions submitted exhibits and presented expert testimony seeking to demonstrate that they met the regulatory criteria for conversion to geography-based membership. *See supra* note 4 (specifying the standards for a

Banks' status as parties under the public interest prong, we find it unnecessary to develop, and respond to, the Credit Unions' argument that one criterion of the direct interest prong was unmet.

9. 1 Pa.Code § 35.31(b) provides:

(b) Action on petitions. As soon as practicable after the expiration of the time for filing answers to the petitions or default thereof, as provided in § 35.36 (relating to answers to petitions to intervene), the agency will grant or deny the petition in whole or in part or may, if found to be appropriate, authorize limited participation. No petitions to intervene may be filed or will be acted upon during a hearing unless permitted by the agency after opportunity for all parties to object thereto. Only to avoid detriment to the public interest will any presiding officer tentatively permit participation in a hearing in advance of, and then only subject to, the granting by the agency of a petition to intervene.

conversion to a geography-based body). The Banks, in turn, cross-examined the Credit Unions' witnesses and called their own experts, who provided testimony attempting to demonstrate that the criteria for the Credit Unions' conversions were not met. Understandably, the Banks did not directly address the unfair competition claim raised in their petitions to intervene in support of their assertion that they had a direct interest in the proceedings, given that intervention was granted in accord with the public interest, rather than the direct interest, prong.

At the conclusion of the hearing, the presiding officer informed the parties that the evidence would be considered and a recommendation would be made to the Secretary of Banking regarding whether the Credit Unions should be entitled to convert to geographically defined membership. Significantly absent was any suggestion by the presiding officer that the Banks' intervenor status was in jeopardy because they failed to prove that they satisfied either the direct interest or the public interest prong. *See supra* note 7. Shortly thereafter, the parties submitted post-hearing briefs containing proposed findings of fact and conclusions of law. In their briefs, the Credit Unions renewed their claim, raised previously in opposition to the Banks' petitions to intervene, that the Banks failed to establish a direct interest in the proceedings, as required by the direct interest prong, and therefore, the Banks should not have been allowed to participate further in the administrative hearing as intervenors.

On December 22, 2004, the Secretary of Banking determined that Freedom and TruMark met the criteria for converting to geography-based membership. However, with respect to Freedom, the Secretary remanded the case back to the Department's staff for the imposition of conditions, limitations, and restrictions. *See* 17 Pa.C.S. § 501(e)(2) (stating that a credit unions' conversion can be subject to reasonable limitations). The Secretary's order also dismissed the Banks as intervenors on the basis that they failed to prove, pursuant to the direct interest prong, that their interests would be directly affected by the alleged unfair competition occasioned

by the Credit Unions' tax-exempt status. The Department's order did not address the public interest prong, which, as noted, was the basis for granting intervention.

Following the Department's decision, the Banks filed a Petition for Review in the Commonwealth Court raising claims invoking both the court's original and appellate jurisdiction. In the original jurisdiction component, which we addressed in *Pennsylvania Bankers Ass'n v. Pennsylvania Department of Banking*, 597 Pa. 1, 948 A.2d 790 (2008) ("*Pa. Bankers I*"), the Banks raised declaratory judgment claims alleging that the tax exemptions provided to credit unions under § 517 of the Credit Union Code, violated Article VIII, §§ 1, 2, 5, and 6 of the Pennsylvania Constitution, as well as the Equal Protection Clause of the United States Constitution. The Banks also raised a similar claim with respect to 17 Pa.C.S. § 501(e), which, as noted, allows credit unions to organize their membership by geographic communities. The Commonwealth Court dismissed some, but not all, of these claims on preliminary objections. On appeal, we held that the Commonwealth Court's order sustaining the Credit Unions' preliminary objections was interlocutory.

The instant matter concerns the appellate component of the Banks' Petition for Review, which raised several issues, including a due process challenge to the Department's order dismissing them as intervenors.[10] With respect to this issue, the Banks asserted that, while the Department could have tenta-

---

10. The Banks raised five other appellate claims before the Commonwealth Court, including: a) whether 71 P.S. § 733–302, which restricts the public dissemination of papers submitted to the Department, is constitutional; b) whether the Department erred in limiting the Banks' access to certain confidential documents in the Credit Unions' possession; c) whether the Department erred in determining that the Credit Unions had established a well-defined local community; d) whether the Department's orders permitting the Credit Unions to convert their membership was supported by substantial evidence; and e) whether the Department improperly used official notice regarding facts pertaining to an unrelated case involving a federal credit union. As discussed *infra*, because the Commonwealth Court concluded that the Department properly revoked the Banks' intervenor status and dismissed them from these proceedings, the Commonwealth Court did not reach the merits of these five claims. We hereby are remanding this matter to the Commonwealth Court to decide these merits-premised arguments.

tively permitted participation and deferred ruling on their petitions to intervene until a later time, *see* 1 Pa.Code § 35.31(b), it did not do so, and instead entered an order specifically granting the Banks' petitions to intervene without qualification. In the Banks' view, because the Department did not indicate that their participation was tentative, or premised upon some additional proof to be addressed at the hearing, the Banks wholly lacked notice that their right to intervene remained in dispute, *see* Petition for Review at 16, depriving them of the opportunity to furnish evidence to support their intervenor status. In the alternative, the Banks averred that they had general standing based on the competitive harm that would result if the Credit Unions were permitted to expand, and therefore, were in substance intervenors as of right. Finally, in a second alternative argument, the Banks claimed that they had standing and, consequently, a right to intervene, as a matter of law.[11]

The Commonwealth Court affirmed the Department's order in a published *en banc* decision. *Pa. Bankers Ass'n v. Pa. Dep't of Banking*, 893 A.2d 864 (Pa.Cmwlth.2006). The Commonwealth Court focused on standing as a condition precedent for intervention and interpreted the Banks' argument as maintaining that, once intervenor status is granted, further proof of standing cannot be compelled. The court rejected this claim, relying on *In re Application of Biester*, 487 Pa. 438, 409 A.2d 848 (1979), discussed *infra*, for the proposition that where a

---

11. In this regard, the Banks asserted that the amendment to the Credit Union Code, 17 Pa.C.S. § 501(e), as well as § 103 of the Banking Code, 7 P.S. § 103 (which states that one of the purposes of the statute is to preserve the competitiveness of financial institutions), were independent statutory bases that would give the Banks standing to participate in the proceedings as a matter of law. Further, the Banks noted that in *National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998), the U.S. Supreme Court concluded that competing financial institutions' interest in limiting the markets of federal credit unions arguably fell within the "zone of interests" to be protected by the Federal Credit Union Act. The Banks averred that this case supported their view that the potential lost profits occasioned by the credit unions' expansion created a direct interest sufficient to provide them with standing. As we ultimately conclude that the Department did indeed err in revoking the Banks' intervenor status, we need not address these theories.

party challenges an intervenor's standing, additional proof of standing can be required despite a prior grant of intervention.[12]

The Commonwealth Court then conducted an analysis of whether the Banks satisfied traditional standing or, alternatively, whether they had standing as a matter of law in this administrative proceeding. With respect to traditional standing, the court observed that standing generally requires an "aggrieved" status, or a substantial and direct interest in the proceedings. *Id.* at 870 (citing *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975)). Applying these principles, the court concluded that the Banks had not proved that they were aggrieved because they failed to demonstrate that they would be harmed if the Credit Unions were allowed to organize geographically. With respect to standing as a matter of law, the court held that there is nothing in the Credit Union Code or the Banking Code suggesting a legislative intent to supplant the traditional definition of standing.[13] Finding that the Banks lacked stand-

**12.** As detailed in full later in the opinion, *Biester* is factually and legally distinguishable from the case at bar. Briefly, *Biester* was a taxpayer standing case wherein a lawyer in his individual capacity sought to intervene and file a petition for review in this Court regarding the Attorney General's application to impanel a multicounty investigating grand jury. We initially granted intervention prior to oral argument on the petition for review. However, after oral argument, wherein the Attorney General challenged standing, we narrowed the test for taxpayer standing and held that the individual in *Biester* failed to satisfy this test. Thus, unlike the instant case, the issue of standing was continuously litigated throughout the pending oral argument in *Biester*, and therefore, the individual in *Biester*, unlike the Banks, had notice that his intervention status remained in dispute, and an ongoing opportunity to prove his standing.

**13.** Regarding the Banks' claim that the amendment to the Credit Union Code, 17 Pa.C.S. § 501(e), gave them standing, the court held that the statute contains no language supporting a different standing test for banks, and that there was no authority that would allow other financial institutions such as commercial banks some special right to intervene in proceedings under the Credit Union Code. The court likewise rejected the Banks' claim that § 103 of the Banking Code was an independent basis providing the Banks standing, noting that § 103 does not indicate legislative intent to provide commercial banks with standing absent the meeting of the traditional test. Finally, the court noted that the Banks' reliance on federal case law pertaining to standing was not controlling

ing, and because the Banks failed to establish an interest sufficient to satisfy the direct interest or public interest prongs of GRAPP, *see supra* note 7, the Court held that the Order dismissing them as intervenors was proper.

The Banks filed a petition for allowance of appeal with this Court seeking to challenge the Commonwealth Court's decision. On April 3, 2007, this Court granted review on the issues raised in the Banks' petition, including a claim that the Department improperly revoked the Banks' intervenor status.[14] While we acknowledge that, in accord with the Commonwealth Court's parlance, these issues are phrased in terms of whether the Banks have standing to participate in the administrative proceedings, we believe that the relevant question is whether the Department, which entered an order granting the Banks' petitions to intervene pursuant to the public interest prong, properly dismissed the Banks based on their failure to prove that they had a direct interest in the proceedings under the direct interest prong.[15] In considering

in that the "zone of interest" analysis under federal law has no analog under Pennsylvania law.

14. The issues, as phrased by the Banks in their petition, are as follows:
 a. Do banks have standing as a matter of law to appeal from the Pennsylvania Department of Banking's approval of community charters for credit unions irrespective of whether banks present evidence in administrative proceedings before the Department regarding direct, immediate and substantial harms to banks resulting from approval of the community charters?
 b. Is revocation of an intervenor's standing in an administrative proceeding dispositive of the issue of the intervenor's standing to appeal from the administrative agency's decision in that proceeding?
 c. Can an administrative agency revoke an intervenor's standing in administrative proceedings where the factual averments upon which the intervenor based its claims of standing were not contested or denied in the proceedings before the agency, when no notice was given to the intervenor that the agency expected to receive testimony regarding uncontested factual issues, when intervention was granted without limitations or restrictions, and when the agency refused to disclose information to the intervenor that was relevant to the intervenor's ability to demonstrate how its interests would be directly affected by the challenged applications before the agency?

15. As discussed later in this opinion, because we ultimately hold that the Department erred in revoking intervention, we do not reach the other issues pertaining to intervention or standing, and remand the

this question of law, our standard of review is *de novo* and the scope of our review is plenary. *C.C.H. v. Phila. Phillies, Inc.*, 596 Pa. 23, 940 A.2d 336, 346 (2008). We now turn to the arguments presented by the parties.

■ The Banks argue that once the Department entered its order granting the Banks' intervention petitions without caveat, there was no further controversy concerning the Banks' party status. Accordingly, the Banks assert that they lacked notice that they were expected or required to furnish additional proof of their standing and consequent eligibility to continue participating as a party, and therefore, the subsequent revocation of their intervenor status by the Department violated due process.

The Banks also note that they sought intervention in accord with the direct interest prong, but the Department granted intervention pursuant to the public interest prong. The Banks therefore question how the Department can fault them for failing to provide proof, in accord with the direct interest prong, that their private interests would be directly impacted by the Credit Unions' conversions to geography-based membership, when consistent with the Department's order, their participation was premised solely on the public interest prong.

Finally, the Banks point out that the Department could have permitted tentative participation in the hearing and deferred ruling on the Banks' petitions to intervene until some later time, *see* 1 Pa.Code § 35.31(b). While this would have put the Banks on notice of their need to prove continuing standing and intervenor status, presumably justifying the Department's and Commonwealth Court's ruling, the Department did not follow this course. Instead, it granted unconditional intervention. Under these circumstances, argues the Banks, they had no reason to offer proof in support of their standing.

The Credit Unions and the Department, in contrast, respond that the Credit Unions opposed the Banks' petitions to intervene on multiple occasions, which put the Banks on notice

claims raised regarding the underlying merits to the Commonwealth Court.

that the basis for their intervention remained continuously in dispute. In this regard, both the Credit Unions and the Department emphasize that after the Banks filed their petitions to intervene, the Credit Unions filed answers challenging the Banks' claim that they would be competitively harmed if the Credit Unions were permitted to convert to geography-based membership. Accordingly, they argue that, because standing was contested, the Banks had an obligation under *Biester* to provide proof at the merits hearing of the continuing basis for their standing and consequent right to intervene. Notably, however, neither the Department nor the Credit Unions reference anywhere in the record where they challenged the Banks' intervenor status after its grant, or put the Banks on notice of the need to offer evidence supporting standing during the administrative hearing.

 We note that the basic tenets of due process apply with equal force in administrative proceedings as they do in judicial proceedings. *See Kowenhoven v. County of Allegheny*, 587 Pa. 545, 901 A.2d 1003 (2006) ("Due process principles apply to quasi-judicial or administrative proceedings...."). Moreover, it is fundamental that the key principles underpinning due process include the requirements of notice and an opportunity to be heard. *See Fiore v. Bd. of Fin. & Revenue*, 534 Pa. 511, 633 A.2d 1111, 1114 (1993) (stating that the essential elements of procedural due process are notice and an opportunity to be heard).

Here, the Banks were granted the seemingly unconditional and unequivocal right to intervene prehearing. With this issue resolved, all parties turned to the merits. After the close of testimony, the Department *sua sponte* resurrected the issue of the Banks' standing, and premised its decision upon this issue. This, it could not do.

Moreover, the Banks' petitions to intervene alleged that they would be competitively harmed by the Credit Unions' conversions to geography-based membership. The Banks asserted that this harm provided them with standing and entitled them to intervene in accordance with the direct interest

prong. Rather than addressing that issue, the Department ignored it, and, instead, entered an order specifically granting intervention in accordance with the public interest prong. Consequently, as they entered the hearing on the merits, the Banks were clearly aware that they were proceeding under the public interest prong, and had no reason to know that they were still expected to proceed to offer proof that they had a direct interest in the proceedings. When, following the hearing, the Department dismissed the Banks as intervenors on the basis that they failed to meet an alleged burden under the direct interest prong, it offended the most basic tenants of due process-the right to notice of the issues to be decided, and an opportunity to offer evidence in furtherance of such issues. *See Fiore*, 633 A.2d at 1114.

Finally, as noted above, there is a process extant that the Department could have employed to give the Banks a tentative right to participate in the hearing process while requiring that the Banks prove standing under with the direct interest or public interest prong. *See* 1 Pa.Code § 35.31(b). Had the Department availed itself of this process, the Banks would have been on notice that their participation in the hearing was contingent on their ability to demonstrate their eligibility to intervene, and the due process concerns present in this matter would not have arisen. The Department, however, did not grant tentative participation, but rather, allowed the Banks to intervene absolutely as parties. *See* 1 Pa.Code § 35.24 (stating that a petition to intervene is required to obtain party status). In this context, due process required that the Banks have notice that their status as intervenors was in dispute and that additional proof of standing to intervene was required.

The Credit Unions and the Department nevertheless adopt the Commonwealth Court's view that, pursuant to *Biester*, intervenors have an obligation to demonstrate continuous eligibility to intervene when a party challenges their standing. The facts of *Biester*, however, are wholly inapposite. In *Biester*, 409 A.2d at 850, the Attorney General filed an application requesting that this Court enter an order that a multi-county investigating grand jury be impaneled, which we grant-

ed. On the same day that we granted the Attorney General's application, an attorney asserted taxpayer standing and filed, *inter alia*, an application for leave to intervene and a petition for review, seeking to set aside the Attorney General's application. This Court initially granted intervention prior to oral argument on the petition for review, after concluding that this Court's precedent, namely, *Smith v. Gallagher*, 408 Pa. 551, 185 A.2d 135 (1962), provided the lawyer with taxpayer standing. After oral argument, at which the Attorney General challenged the lawyer's taxpayer standing, we substantially narrowed our decision in *Smith*, holding that taxpayer standing would be available to challenge government action only when the conduct would otherwise go unchallenged. *Id.* at 851–53. Applying this narrower interpretation of taxpayer standing, we vacated our order granting intervention and concluded that the lawyer in *Biester*, in his capacity as a taxpayer, was without standing to challenge the Attorney General's application. *Id.*

As the foregoing discussion illustrates, *Biester* is easily distinguished from the present matter. Unlike in *Biester*, this is not a taxpayer standing case, but rather, a claim to intervention governed by the direct interest and public interest prongs of GRAPP, *see supra* note 7. Moreover, unlike *Biester*, where the parties continued to contest standing throughout the proceedings, the Banks were unaware that their status as intervenors was in dispute until after the administrative hearing was complete. As such, the due process concerns at the heart of this controversy were not at issue in *Biester*, where the lawyer seeking taxpayer standing had continual notice that his intervention status remained unresolved, and an ongoing full opportunity to assert his claim to taxpayer standing. Accordingly, the Credit Unions' and the Department's reliance on *Biester* is misplaced.

In light of our conclusion that the Department improperly revoked the Banks' intervenor status after not giving them notice that standing and intervention remained undecided and subject to proof, we do not reach the Banks' remaining issues pertaining to standing, *see supra* note 15, or the merits

contentions. We hold that the Commonwealth Court's order affirming the Department's order dismissing the Banks as intervenors was in error. We reverse its decision, reinstate the Banks as parties in this action, and remand for the Commonwealth Court to address the remaining claims raised in the Banks' Petition for Review.

Chief Justice CASTILLE, Justice SAYLOR, Justice TODD and Justice McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

I respectfully dissent from the majority's reversal of the Commonwealth Court's *en banc* opinion, thereby holding the Pennsylvania Department of Banking "improperly revoked the Banks' intervenor status after not giving them notice that standing and intervention remained undecided and subject to proof...." Majority Op., at 329, 956 A.2d at 966. To the contrary, I believe the Banks had sufficient notice their party status was undecided.

The presiding officer "granted" the Banks' petitions to intervene subject to 1 Pa.Code § 35.31(b). *Pennsylvania Bankers Association v. Pennsylvania Department of Banking*, 893 A.2d 864, 867 n. 5 (Pa.Cmwlth.2006). Section 35.31(b) states, "Only to avoid detriment to the public interest will any presiding officer tentatively permit participation in a hearing in advance of, and then only subject to, the granting by the agency of a petition to intervene." 1 Pa.Code § 35.31(b). Based on the presiding officer's order's conditional language, I would find the Banks only obtained permission to participate in a hearing pursuant to § 35.31(b).

Further, the presiding officer's order expressly stated the Banks' party status was subject to § 35.31(b). *See Pennsylvania Bankers Association*, at 867 n. 5. Therefore, I believe the Banks had sufficient notice their party status remained unresolved and subject to proof. The Banks simply failed to produce any evidence in support of intervention, and I fail to see a manifest abuse of discretion under these circumstances.

*See id.,* at 872; *see also West Chester Area School District v. Collegium Charter School,* 571 Pa. 503, 812 A.2d 1172, 1186 (2002) (agency decision on intervention will not be disturbed absent manifest abuse of discretion).

Based on the foregoing, I would affirm the Commonwealth Court.