# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| Carisa Kozicki, | : | | |
| Petitioner | : | **SEALED CASE** | |
| | : | | |
| v. | : | | |
| | : | | |
| Unemployment Compensation | : | | |
| Board of Review, | : | No. 1490 C.D. 2021 | |
| Respondent | : | Argued: June 5, 2023 | |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                                                    FILED:  July 20, 2023

Carisa Kozicki (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) November 23, 2021 order affirming the Referee's decision that found Claimant eligible for a weekly Pandemic Unemployment Assistance (PUA) benefit rate of $296.00 under Section 9102(d) of the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act).[1]  Claimant presents two issues for this Court's review: (1) whether the UCBR erred by affirming the Referee's decision to calculate Claimant's PUA benefits based upon her prorated annual net income instead of the actual net income in her highest quarter; and (2) whether the Department of Labor and Industry (Department) violated Claimant's due process rights by requiring her to upload substantiating documents to its evidentiary portal, and then failing to transmit those documents to the Referee.  After review, this Court vacates and remands.

_____

[1] 15 U.S.C. § 9021 (relating to the creation of the PUA program).

**Facts**

On March 14, 2021, Claimant applied for PUA benefits. On March 29, 2021, the UC Service Center determined that, based on Claimant's quarterly income of $0.00 for 2020, "[p]rovided [Claimant] meet[s] all program deadlines and eligibility requirements during the week(s) claimed, [Claimant is] eligible for a weekly [PUA] benefit amount [] of $195.00 and a dependent(s) allowance [] of $0.[00]." Certified Record (C.R.) at 12. On April 6, 2021, Claimant appealed from the UC Service Center's determination. On June 1, 2021, a Referee held a telephone hearing. On June 2, 2021, the Referee affirmed the UC Service Center's determination, as modified, and found Claimant eligible for a $296.00 weekly PUA benefit rate under Section 2102(d) of the CARES Act. Claimant appealed to the UCBR. On November 23, 2021, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[2, 3]

On April 27, 2022, Claimant filed an Application for Leave to Supply Documents Omitted from the Certified Record Pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1951(b) (Application). Therein, Claimant alleged that the UCBR had not filed with the Court material, relevant, and necessary records that Claimant had timely submitted to the UC Office prior to the Referee hearing, that were provided to the UCBR before its November 23, 2021 decision, and that were part of the administrative record. On May 11, 2022, the UCBR opposed the Application. By May 17, 2022 Order, this Court directed that the Application be listed with the merits of the appeal.

---

[2] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

[3] Philadelphia Legal Assistance filed an amicus curiae brief in support of Claimant.

**Discussion**

Claimant first argues that the UCBR erred by affirming the Referee's decision to calculate Claimant's PUA benefits based upon Claimant's prorated annual net income instead of the actual net income in her highest quarter.

Initially, Section 2102 of the CARES Act created the PUA program. Section 2102(a)(3) of the CARES Act provides, in relevant part:

> **Covered individual**
>
> The term "covered individual"--
>
> **(A)** means an individual who--
>
> **(i)** is not eligible for regular compensation or extended benefits under [s]tate or [f]ederal law or pandemic emergency [UC] under [S]ection 9025 of [the CARES Act], including an individual who has exhausted all rights to regular unemployment or extended benefits under [s]tate or [f]ederal law or pandemic emergency [UC] under [S]ection 9025 of [the CARES Act];
>
> **(ii)** provides self-certification that the individual--
>
> . . . .
>
> **(II) is self-employed**, is seeking part-time employment, does not have sufficient work history, . . . ; and
>
> **(iii)** provides documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment not later than 21 days after the later of the date on which the individual submits an application for [PUA] under this section or the date on which an individual is directed by the [s]tate [a]gency to submit such documentation . . . , except that such deadline may be extended if the individual has shown good cause under applicable [s]tate law for failing to submit such documentation[.]

15 U.S.C. § 9021(a)(3) (text emphasis added). Here, the Department determined that Claimant was eligible for PUA benefits on the basis of her self-employment.

3

Thus, the issue before this Court is whether the UCBR properly calculated Claimant's weekly PUA benefit amount.

Section 9021(d)(2) of the CARES Act instructs:

> **Calculations of amounts for certain covered individuals**
>
> In the case of a covered individual who is self-employed, . . . the assistance authorized under subsection (b) for a week of unemployment shall be calculated in accordance with [S]ection 625.6 of . . . [the] Code of Federal Regulations, [20 C.F.R. § 625.6,] . . . and shall be increased by the amount of [f]ederal Pandemic [UC] under [S]ection 9023 of [the CARES Act].

15 U.S.C. § 9021(d)(2). Section 625.6(a) of the Code of Federal Regulations mandates, in relevant part:

> In all [s]tates, . . . the amount of [PUA] payable to an unemployed worker or unemployed self-employed individual for a week of total unemployment shall be the weekly amount of compensation the individual would have been paid as regular compensation, **as computed under the provisions of the applicable [s]tate law for a week of total unemployment**. In no event shall such amount be in excess of the maximum amount of regular compensation authorized under the applicable [s]tate law for that week.
>
> . . . .
>
> (2) . . . . [T]he base period to be utilized in computing the [PUA] weekly amount shall be the most recent tax year that has ended for the individual (whether an employee or self-employed) prior to the individual's unemployment that was a direct result of the major disaster. **The self-employment income to be treated as wages for purposes of computing the weekly amount** . . . **shall be the net income reported on the tax return** of the individual as income from all self-employment that was dependent upon the performance of services by the individual.

4

20 C.F.R. § 625.6(a) (emphasis added).

Section 404 of the UC Law[4] provides Pennsylvania's calculation amounts, and expressly describes, in relevant part:

> (a)(1) The employe's weekly benefit rate shall be computed as (1) the amount appearing in Part B of the Table Specified for the Determination of Rate and Amount of Benefits on the line on which in Part A there appears his "*highest quarterly wage*," or (2) fifty per centum (50%) of his full-time weekly wage, whichever is greater. . . .
>
> . . . .
>
> (b) The "**highest quarterly wages**" of an employe shall be the total wages (computed to the nearest dollar) which were paid to such employe in that calendar quarter in which such total wages were highest during the base year.

43 P.S. § 804 (italic emphasis added).

Given that the PUA program was created to provide temporary income assistance to individuals who are unemployed due to specified COVID-19 pandemic-related reasons, and who are not eligible for regular state or federal UC benefits, and that Section 625.6(a) of the Code of Federal Regulations expressly requires use of applicable state law in computing calculations thereof, this Court concludes that, provided a claimant submits the proper documents, PUA must be calculated using a claimant's highest quarterly wage as opposed to his/her prorated annual net income.

Here, the UCBR concluded:

> The Referee prorated [] [C]laimant's net income reported on her 2019 tax returns for both her businesses to derive a weekly benefit amount [(WBA)] and he did so in a manner

---

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

most favorable to [] [C]laimant. This approach is consistent with the federal law . . . . The [UCBR] is unable to substantiate [] [C]laimant's present claim of high quarterly income of $14,743[.00], based on the hearing record developed before the Referee. Nowhere in the hearing did [] [C]laimant inform the Referee of this figure. The best the [UCBR] can discern is that [] [C]laimant used net taxable sales to develop this figure. In any event, federal law requires states to use the net income reported on the individual's tax return when determining the weekly amount for self-employed individuals. Accordingly, the [UCBR] is unable to determine any error by the Referee.

UCBR Dec. at 2. Based upon the above-quoted CARES Act provisions, the Code of Federal Regulations, and the UC Law, the UCBR erred by concluding that federal law requires states to use a claimant's prorated net income as opposed to his/her highest quarterly wage.

Claimant next argues that the Department violated Claimant's due process rights by requiring her to upload substantiating documents to its evidentiary portal, and then failing to transmit those documents to the Referee, resulting in an incomplete record and reversible error. The UCBR rejoins that it did not violate Claimant's due process rights because its decision was based on the complete record before it, and Claimant failed to assert that documents were missing from the record or identify those records.

As [the Pennsylvania Supreme] Court has emphasized, "the basic tenets of due process apply with equal force in administrative proceedings as they do in judicial proceedings . . . [.] [I]t is fundamental that the key principles underpinning due process include the requirements of notice and an opportunity to be heard." *Pa. Bankers Ass['n] v. Pa. Dep['t] of Banking*, . . . 956 A.2d 956, 965 ([Pa.] 2008); *see also Vann v. [Unemployment Comp. Bd. of Rev.]*, . . . 494 A.2d 1081 ([Pa.] 1985) ([UCBR's] procedural rules regarding appeals must comport with the guarantees of fundamental due process). **Adequate notice in this context includes**

6

the "**right to notice of the issues to be decided**, **and an opportunity to offer evidence in furtherance of such issues**." *Pa. Bankers Ass*[*'n*], 956 A.2d at 965.

*Quigley v. Unemployment Comp. Bd. of Rev.*, 263 A.3d 574, 593-94 (Pa. 2021) (emphasis added).

Here, Claimant testified before the Referee:

R[eferee:] Okay. I don't have any other questions then, was there anything else you wanted to add for me to consider, [Claimant]?

C[laimant:] I think I have a few questions, if that's okay and one of my concerns with that, the paperwork I kept receiving said that I claimed zero dollars for 2019 and 2020 and as **I kept sending information via email and through my portal** I -- those numbers are completely incorrect. They kept saying that I claimed zero dollars for either year and that I had no employment record. **And I had uploaded all of my financial records** and tried calling people and asking for somebody to please clarify so that is why I thought my [d]etermination was incorrect because it said I had zero dollars for either year and zero work history. I feel it's because I don't [know] how I would have even qualified for [PUA] to begin with. I had no work history and I had no money or income for either year. I wouldn't have either [sic] qualified. My initial -- that was my concern and I think you even said it, that I had zero dollars and zero work history for 2019, that I had no income which is not accurate.

R[eferee:] That's what the [UC] Service Center recorded. I'm not sure how they -- I don't know whether -- because I do see from your [a]ppeal you included gross records in your [a]ppeal, so that may have been what -- they couldn't issue a [d]ecision on gross income, they had to wait until you got -- they got your Schedule C and your [Internal Revenue Service form] 1040. They needed those, both of those documents in order to make a [d]ecision, so.

C[laimant:] Well, **unfortunately all that information is in my portal as I told them**, **and it was in there with** -- **before**. But I don't know.

R[eferee:] And I . . .

C[laimant:] **Nobody contact**[ed] **me again**.

C.R. at 76-77 (emphasis added).

Claimant's witness[5] clarified:

R[eferee:] Okay. Is there anything else you wanted to add or I'm not sure if anything [Claimant's witness] was going to add.

C[laimant's] W[itness:] We -- the information on the [d]etermination [Claimant] received said that her [PUA] would be based on 2019.

R[eferee:] Correct.

C[laimant's] W[itness:] Income, right. So we were wondering if that is accurate? I mean, because **I guess they have all the information now**.

R[eferee:] **I have the information now**. So **I'll make a [d]ecision based on what she's submitted**.

C[laimant's] W[itness:] Okay.

C.R. at 77 (emphasis added).

Finally, the Referee asked again:

R[eferee:] Okay. Was there anything else then?

. . . .

C[laimant:] **Do you need any additional information from me**?

R[eferee:] Well, the only issue before me is your financial eligibility and **based on what you told me**, **I have enough information to make a [d]ecision** so I shouldn't need anything else.

---

[5] Claimant acted *pro se* at the Referee hearing. Her witness "[was] [t]here to help [Claimant] interpret[] all the paperwork from Pennsylvania Unemployment. [Claimant's witness] worked for the [B]ureau [of Unemployment] for 20 plus years." C.R. at 73.

8

C[laimant:] Okay.

C.R. at 78 (emphasis added).

Claimant informed the Referee that she had submitted information that the Department did not consider in making its determination, and wanted to ensure the Referee had all applicable documents. Confusing the situation even more, the Referee stated: "[T]he only issue before me is your financial eligibility . . . [,]" when in fact, the issue before the Referee was the amount of Claimant's PUA benefits. *Id*.

Moreover, in her appeal to the UCBR, Claimant stated, in relevant part:

I am submitting this further appeal of Referee [d]ecision [d]ocket #2021010541, mailed on [June 2, 2021], and/or requesting reconsideration/redetermination. According to Pennsylvania [UC] Law, my high quarter net income of $14,743.00 qualifies for [PUA weekly benefits] of $572.00.

My $14,743[.00] (my gross income for that quarter is $18[,]065[.00], but I have calculated my net earnings and provided that information. That is how my 2020 PUA was determined) high quarter wages were verified by my quarterly taxes form submitted to the Pennsylvania [Department] of Revenue and copies were sent to the Bureau of Unemployment as I provided both my net and my gross income.

I have also submitted copies of [Internal Revenue Service] form Schedule C to the Bureau of Unemployment to verify my net income of $28,008[.00] for calendar year 2019. I own two businesses, Carisak Photography and Thrive Space, both shut down and [were] affected by the pandemic in March 2020. This proves a sufficient percent of income outside my 2019 high quarter. It also proves I have qualifying income to receive a [PUA weekly benefit] of $572.00.

PUA [WBA] is to be computed in accordance with the same formula and tables to compute [WBAs] under the state's regular [UC] program.

Furthermore, I am not even sure how the figures were computed by my appeal officer as none of them match the

9

income or paperwork I provided. Could someone explain to me how these figures were generated? The findings of fact listed on my appeal decision are inaccurate. It appears the [R]eferee made up the quarter amounts I made **regardless of my provided paperwork and tax documents** as they do not match any of my 2019 quarters. **I provided the information that was asked for and required by the law**. We also verified with the [R]eferee [] that the [D]epartment was using 2019 income and high quarters to determine [PUA]. He stated that was true. He stated at the time that he could not see any income except for the Thrive Space income **despite the fact that both my [f]ederal [t]ax Schedule C was provided and that my [Pennsylvania] Sales Tax/Income was provided numerous times and has been in my portal since April 2020 and was emailed numerous times as well**.

. . . .

. . . . Therefore, my tax documents provided to the Bureau of Unemployment provide sufficient required and legal information and should be used to determine my [PUA].

C.R. at 91-92 (emphasis added).

Claimant further reported:

I received this paperwork in the mail which I have also attached. Also attached are the forms I file every month that show my gross sales as a business owner in [Pennsylvania]. **These forms are included and show up in my dashboard on [the] PUA portal**, **so I'm not sure why I must resend them but here they are**. These are my business records. I do not have an employer, I am self-employed. My work documents prove my gross sales and my business record for the past 18 months. However[,] I have calculated my net income and listed it. I have been in business since 2005. These are actual filings with the [Pennsylvania] state that are legal documents.

C.R. at 92 (emphasis added).

10

This Court recognizes:

> Under Pennsylvania law, *pro se* [litigants] are subject to the same rules of procedure as are represented [litigants]. *See Commonwealth v. Williams*, . . . 896 A.2d 523, 534 ([Pa.] 2006) (*pro se* [litigants] are held to same standards as licensed attorneys).
>
> Although the courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading.

*Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa. 2014). However, here, Claimant testified that she submitted all of her paperwork on the UC portal[6] as instructed, and had no reason to suspect that when the Referee informed her that he had "enough information to make a [d]ecision," that he, in fact, did not.[7] C.R. at 78. Upon receipt of the Referee decision, and realizing, once again, that her documents were not considered, Claimant notified the UCBR of the same. Notwithstanding that Claimant testified that she submitted all of her financial records and only a portion thereof were considered by the Referee and the UCBR, Claimant was not given "an opportunity to offer evidence in furtherance of [her] issues[,]" and, thus, Claimant was denied due process. *Quigley*, 263 A.3d at 594 (quoting *Pa. Bankers Ass'n*, 956 A.2d at 965).

---

[6] At oral argument, the UCBR's counsel explained that the UC portal is a centralized location where claimants can upload or receive documents electronically. He further represented to the Court that the UC portal was launched during the COVID-19 pandemic, and that the Department experienced many problems with its roll out due to the high volume of users and the newness of the system.

[7] At oral argument, the UCBR's counsel stated that the Referee does not receive all documents uploaded in the UC portal. Rather, the only documents uploaded in the UC portal that are forwarded to the Referee are the documents that the UC Service Center relies upon to make its determination.

11

Relative to the Application, Claimant asserts that the UCBR had not filed material, relevant, and necessary records with the Court that Claimant timely submitted to the UC Office prior to the Referee hearing, that were provided to the UCBR before its November 23, 2021 decision, and that were part of the administrative record. Claimant, therefore requests leave to supply the aforementioned records to be included in the certified record. The UCBR rejoins that the UCBR did not consider any of the evidence being offered to supplement the record and, consequently, these documents cannot be added to the record in this case.

This Court has explained:

An appellate court is limited to considering only those facts that have been duly certified in the record on appeal. *City of Pittsburgh Comm*[*'n*] *on Hum*[*.*] [*Rels.*] *v. DeFelice*, 782 A.2d 586, 593 n. 10 (Pa. Cmwlth. 2001). For purposes of appellate review, that which is not part of the certified record does not exist. *Id*. Documents attached to a brief as an appendix or reproduced record may not be considered by an appellate court when they are not part of the certified record. *Stabler Dev*[*.*] *Co*[*.*] *v. B*[*d.*] *of Supervisors of Lower Mt. Bethel T*[*wp.*], 695 A.2d 882, 887 n.5 (Pa. Cmwlth. 1997) . . . . "[I]t is the responsibility of the [petitioner] to supply this Court with a complete record for purposes of review. The failure by a[ petitioner] to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue(s) sought to be examined." *Salameh v. Spossey*, 731 A.2d 649, 658 (Pa. Cmwlth. [1999]) . . . (citation omitted).

*B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657-58 (Pa. Cmwlth. 2012).

Here, Claimant is seeking

inclusion of [her Department records] in the certified record of this appeal as a supplemental record pursuant to [Rule] . . . 1951(b). *Steglik v. Workers' Comp*[*.*] *Appeal* [*Bd.*] *(Delta Gulf Corp*[*.*]*)*, 755 A.2d 69, 74 n. 3 (Pa. Cmwlth. [2000]) . . . ; *Williams v. Workmen's Comp*[*.*]

12

> *Appeal* [*Bd.*] *(Green Constr*[.] *Co.)*, 687 A.2d 428, 431 n.3
> (Pa. Cmwlth. 1997).

*B.K.*, 36 A.3d at 658. However, because those records were not supplied to, or considered by the Referee or the UCBR, they are not part of the record as defined by Rule 1951(a), and cannot be considered by this Court in this appeal. Accordingly, Claimant's Application is denied.


### Conclusion

The UCBR erred by affirming the Referee's decision to calculate Claimant's PUA benefits based upon her prorated annual net income instead of the actual net income in her highest quarter. In addition, the UCBR violated Claimant's due process rights by failing to include all necessary documents submitted to the Department in the record before the Referee.

For all of the above reasons, the UCBR's order is vacated, and the matter is remanded to the UCBR to hold an evidentiary hearing and to consider all of Claimant's relevant records previously submitted to the Department regarding her PUA claim, including, but not limited to, Claimant's "sales tax documents, tax records, expenses for [her] highest quarter, and bank records." C.R. at 58. Claimant's Application is denied.


_____
ANNE E. COVEY, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carisa Kozicki,                :
         Petitioner      :
                       :
        v.                :
                       :
Unemployment Compensation  :
Board of Review,          :    No. 1490 C.D. 2021
         Respondent    :

## O R D E R

AND NOW, this 20th day of July, 2023, the Unemployment Compensation Board of Review's (UCBR) November 23, 2021 order is VACATED, and the matter is REMANDED to the UCBR for further proceedings consistent with this Opinion.

Carisa Kozicki's Application for Leave to Supply Documents Omitted from the Certified Record Pursuant to Pennsylvania Rule of Appellate Procedure 1951(b) is DENIED.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge