IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| CAITLIN QUIGLEY, | : | No. 20 EAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | January 28, 2020 at No. 1449 CD |
| v. | : | 2017 vacating/remanding the Order |
| | : | of the Unemployment Compensation |
| | : | Board of Review entered on August |
| UNEMPLOYMENT COMPENSATION | : | 8, 2017 at No. B-17-09-G-2764. |
| BOARD OF REVIEW, | : | |
| | : | ARGUED:  March 9, 2021 |
| Appellant | : | |

## OPINION

**JUSTICE TODD**                                              **DECIDED:  November 17, 2021**

In this appeal, we consider whether Appellant, the Unemployment Compensation Board of Review ("Board"), erred in reversing the award of unemployment compensation ("UC") benefits to Appellee Caitlin Quigley ("Claimant") by *sua sponte* concluding she was ineligible for such benefits, where the issue of her eligibility was not raised in her appeal to the Board or below.  After careful review, we determine that the Board did err, and, consequently, we affirm the decision of the Commonwealth Court, which reversed the Board's ruling and remanded.

### I.  Factual and Procedural Background

On April 7, 2017, Claimant was laid off from her job as the Director of Communication and Development of a Philadelphia area nonprofit service corporation. As a result, she applied for UC benefits with the Indiana County Unemployment Service

Center ("service center") operated by the Department of Labor and Industry ("Department"). In the questionnaire accompanying her application for benefits, she noted that she had been engaged in a "sideline business"[1] since 2015, which involved providing writing and editing services on a freelance basis to another nonprofit corporation, the Bread & Roses Community Fund. Claimant Questionnaire, 4/11/17 (R.R. at 6).[2] Claimant also indicated in the questionnaire that she anticipated a reduced income in 2017 from these activities, and she attached to the questionnaire, pursuant to its instructions, a copy of Schedule C of her 2016 federal tax return showing the income she had received from this sideline business during that year. At the time of her application for benefits, Claimant notified the service center, as noted in its records, that her phone would be disconnected for three weeks, and she indicated that the center should contact her by email. Unemployment Service Center Claim Record, 4/17/21 (R.R. at 3).

On April 12, 2017, the service center issued a "Notice of Determination," in which it ruled that Claimant was eligible to receive UC benefits, finding:

> Claimant did work in regular employment while engaged in the self-employment and the Claimant's regular earnings exceeded the net profit from the self-employment. . . . Claimant did not substantially increase her involvement in the self-employment following the loss of her regular employment and the Claimant is able and available for full-time work. As

---

[1] Under Section 802(h) of the Pennsylvania's Unemployment Compensation Law ("UC Law"), a claimant is ineligible to receive unemployment compensation benefits if he or she is engaged in self-employment, unless such self-employment activity constitutes a "sideline business" – that is, the activity began prior to the claimant being separated from full time work, the activity continued substantially unchanged after the claimant's separation, the claimant remains available for suitable full-time work, and the claimant's self-employment activity is not the primary source of his or her livelihood. 43 P.S. § 802(h); *Moskos v. UCBR*, 466 A.2d 258, 259 (Pa Cmwlth. 1983). If it is determined that a claimant is engaged in a sideline business, then the prorated amount of his earnings from that business is deducted from his weekly UC benefit. 43 P.S. § 802(h).

[2] R.R. designates references to the reproduced record of the administrative proceedings held in this matter.

such, the Claimant's business qualifies as a sideline business and benefits are allowed under [Section 802(h)] of the [UC] Law. The Claimant's prorated earnings of $237.00 from the sideline business are deductible from her weekly benefit amount.

Notice of Determination, 4/12/17, at 1 (R.R. at 13).

After receipt of this decision, Claimant considered the amount of prorated income attributed to her sideline business (and deducted from her benefits) to be too high. Consequently, proceeding *pro se*, she filed a petition for appeal with the Department in which she explained the basis for her challenge:

I believe that your determination overestimated the amount of income I will have from my sideline business. In my schedule C for 2016, it reflected a lot of 1099 income for two reasons: 1) before April 1, 2016, I worked on 1099 for the Philadelphia Area Cooperative Alliance for 30 hours a week and 2) I did a lot more work overall last year in my sideline business for Bread & Roses than I anticipate doing this year. My total income from my sideline business this year will be approximately $2,000. Please reconsider your determination based on this information. I understand that it makes sense to prorate it, but the sideline business is not a significant source of income for me.

Attachment 2B to Petition for Appeal, 4/18/17 (R.R. at 19) (emphasis deleted).

The Department scheduled a hearing before a referee[3] from the Philadelphia Referee Office on May 9, 2017 and provided Claimant with written notice of it. The notice indicated that the issue to be considered in the appeal was "[w]hether claimant is engaged in self-employment." Notice of Hearing, 4/26/17 (R.R. at 22). On April 30, 2017, Claimant sent an email to the referee's office requesting the hearing be continued until after May

---

[3] A referee is an individual employed by the Commonwealth of Pennsylvania and appointed to conduct hearings on appeals from benefits determinations under the UC Law. 43 P.S. § 753; 34 Pa. Code § 101.2.

25, 2017, and indicating that email was the best way to reach her. Email, 5/1/17 (R.R. at 32). The office did not reply to the email, but, instead, a representative called Claimant's phone number, which she had previously informed the Department was disconnected, and he left a voice message on Claimant's voicemail stating that the request for postponement was denied. Claimant avers that, because her phone service was disconnected at the time the message was left, she could not access her voicemail — a fact her recorded voicemail greeting purportedly relayed; thus, it was only on May 25, 2017, when her service was reconnected, that she first learned of the denial of the continuance. Petition for Reconsideration, 8/18/17 (R.R. at 55).

The hearing before the referee took place, as scheduled, on May 9, 2017, without Claimant in attendance. The Department did not participate in the hearing. In her decision, the referee described the issue which she considered in the hearing as "Is the claimant's income from self-employment deductible from UC, and, if so, to what extent?" Referee's Decision, 5/11/17, at 2 (R.R. at 40). The referee also noted that the service center had determined that Claimant's sideline business did not disqualify her from receiving benefits under Section 802(h); thus, the referee viewed the extant issue as "whether income from it is deductible from UC." *Id.*

Using data from her 2016 federal income tax return which she had attached to her questionnaire, the referee applied the relevant Department regulation, 34 Pa. Code § 65.121, to compute the weekly prorated income from Claimant's sideline business (which was thus required to be deducted from her UC benefits) as $228.34, instead of the Department's calculation of $237.00.

After receiving the referee's decision, which was sent by regular United States Mail to Claimant, she, again proceeding *pro se*, responded by filing a petition for appeal with the Board. In that petition, Claimant provided the following reason for her appeal:

> You are calculating my benefits based on my 2016 sideline business earnings, but I expect my 2017 sideline business earnings to be approximately $3,100 for the year, which is significantly lower than the amount shown on my 2016 Schedule C, which showed $11,784.00 in income. This is because I was paid as a 1099 contractor for my full-time work with the Philadelphia Area Cooperative Alliance between January 1 and March 31 of 2016 and then was converted into a W2 employee on April 1, 2016. My sideline business only has one client, Bread & Roses Community Fund, and I anticipate approximately $3,100 in earnings for 2017. Please calculate my reduction based on the $3,100 number and not the $11,784 number. My year-to-date sideline business income is $1,539 and I have done exactly half of the work I anticipate performing this year for the sideline business.

Attachment 1 to Petition for Appeal, 5/17/17 (R.R. at 49).

The Board did not conduct a hearing, but, instead, issued a decision on August 8, 2017 in which it ruled that Claimant was ineligible for benefits under Section 802(h). In its written adjudication, the Board did not accept the determinations of the Department or the referee that Claimant's freelance work qualified as a sideline business, but instead proceeded to apply the four-part test set forth above, *see supra* note 1, for determining whether a self-employment activity disqualifies a claimant from receiving UC benefits. In applying this test, the Board ruled:

> The claimant concedes that she owned and operated an independent business, but failed to present competent evidence for the [Board] to conclude that she fit into the sideline activity exception because she failed to appear at the hearing in this matter.
>
> In her appeal, the claimant takes issue with the calculation of the Referee. However, it was the claimant's burden to prove

that she fell within the sideline business exception to self-employment before any calculation can be made. Therefore, the Board does not address the calculation of her prorated weekly deductible amount because she did not meet her initial burden.

Board Decision, 8/8/17, at 1-2 (R.R. at 51-52). Based on this rationale, the Board reversed the referee's decision and denied Claimant benefits.

Claimant filed a petition for reconsideration of the Board's decision in which she asserted that the reason she did not attend the referee hearing was because she was out of town, and did not receive the voicemail message from the referee's office that her request for a continuance was denied because her phone was not working. Claimant averred that she had informed the Department about her malfunctioning phone, and highlighted her voicemail greeting stating that she did not have the ability to receive voicemail; nevertheless, the referee's office did not email her about the denial, even though she had indicated this was the preferable way for her to receive communications, nor did it inform her of its decision in writing by regular mail. Claimant stated her belief that these circumstances constituted good cause for her nonappearance, and that, had she testified, she could have "cleared up the issue" of the earnings she received from her business, as well as established "that the work at issue was a side business and never my primary form of income." Request for Reconsideration, 8/18/17 (R.R. at 55).

Claimant also challenged the failure of the Board to remand the matter to a referee rather than dismissing her claim, stating that "[i]nstead of giving me a remand hearing based on the unfairly denied continuance, the Board reversed the referee's finding of partial ineligibility and found me completely ineligible. I believe I have a right to a remand hearing in this case." *Id.*

The Board denied the request for reconsideration by order dated September 5, 2017. On October 12, 2017, Claimant, who remained unrepresented at that time, filed a petition for review of the Board's decision with the Commonwealth Court in which she challenged the Board's action of ruling that she was ineligible for benefits, when the purpose of her appeal was to challenge only the determination of the amount of her benefits.

On August 13, 2018, counsel from Philadelphia Legal Assistance, who currently represents Claimant before our Court, entered her appearance on Claimant's behalf. Thereafter, the Commonwealth Court ordered supplemental briefing on this question:

> In an administrative appeal under the [UC] Law, is the Referee or the Unemployment Compensation Board of Review authorized to change, *sua sponte*, the scope of a claimant's appeal to address an issue not raised by the separating employer or the claimant?

*Quigley v. Unemployment Compensation Board of Review,* 225 A.3d 914, 919 (Pa. Cmwlth. 2020) ("*Quigley*").[4]

---

[4] In granting supplemental briefing, the Commonwealth Court observed that, in Claimant's *pro se* pleadings to that tribunal, she had asserted as the basis for her requested relief that "the Board 'erred' and rendered a decision that was not 'fair' because the only purpose of her appeal was to determine the amount of her benefit, not her eligibility." *Quigley*, 225 A.3d at 918 n.6. The Commonwealth Court discerned that these assertions constituted "a challenge to the Board's authority to change the scope of her appeal." *Id.* We agree with the Commonwealth Court's assessment that Claimant's claim of error may be legitimately interpreted as encompassing the question of whether the Board *sua sponte* expanded the scope of its appellate review to consider an issue that was not raised by either her or her employer, and that no additional "magic words" were necessary for her to have preserved this issue for appellate review. *Id.* Respectfully, then, it is for this reason we do not accept the dissent's contention that the Commonwealth Court itself "*sua sponte* raise[d] an issue for its own consideration." Dissenting Opinion (Donohue, J.) at 1-2 n.1.

Following that briefing, the court reversed in a 5-2 *en banc* decision authored by President Judge Mary Hannah Leavitt.[5] The court began its analysis by noting that the UC Law is remedial in nature, and, as such, the rules governing unemployment compensation proceedings should be given a liberal construction in accordance with this remedial purpose. The court then proceeded to consider whether the Board interpreted the relevant regulations applicable to this case consistent with this principle.

The court identified two administrative regulations promulgated by the Department[6] – 34 Pa.Code § 101.87 (governing appeals from a decision of the Department), and 34 Pa. Code § 101.107 (governing appeals from a referee to the Board) – as establishing the powers and duties of the Board applicable to Claimant's appeal. These regulations provide:

> **§ 101.87 Issues considered on original appeal**
>
> When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

34 Pa. Code § 101.87. ("Regulation 101.87").

> **§ 101.107. Issues considered on appeal.**
>
> (a) In connection with the consideration of an appeal to the Board from the decision of a referee, the Board may consider

---

[5] Judge Leavitt was joined by Judges McCullough, Covey, Fizzano Cannon, and Ceisler. As discussed more fully herein, Judges Cohn Jubelirer and Wojcik each authored separate dissents, and each joined the other's dissent.

[6] See 43 P.S. § 761 (granting Department the "authority to adopt, amend, and rescind such rules and regulations" to administer and enforce the UC Law).

an issue in the case though not expressly ruled upon in the decision of the Department or the referee and though not previously raised in the claim or appeal proceedings. However, issues not previously considered or raised will not be considered by the Board, either upon application for, or in the determination of an appeal unless the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

(b) The Board shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case, with the approval of the parties, may be determined though not expressly ruled upon or indicated in the notice of hearing, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

34 Pa. Code § 101.107 ("Regulation 101.107").

The court first rejected the Board's argument that its right of review conferred by Regulation 101.87 was broad enough for it to consider issues other than the discrete issues raised by a claimant. The court noted that the issue of Claimant's eligibility in this matter was never in dispute, given that both the Department and the referee determined she was eligible for benefits because her self-employment met the criteria for being a sideline business, and neither her employer nor the Department contested this determination during the appeals process. Thus, in the court's view, it was "problematic" for the Board to transform the essential nature of the controversy from one involving the proper calculation of benefits to one involving eligibility. *Quigley*, 225 A.3d at 922. The court found that this transformation did not comport with due process, inasmuch as due process requires that "there must be a controversy between at least two of the parties at every stage of the appeal." *Id.*

The court next found the Board's reading of Regulation 101.107(b) to be "overly technical" and "restrictive," and also at odds with the remedial purpose of the UC Law.

*Id.* In particular, the court highlighted the fact that "[e]ffectively, the Board dismissed Claimant's appeal because of her nonappearance at the Referee hearing." *Id.* The court pointed out this was at odds with its own prior precedent which indicated that a claimant's appeal should not be dismissed for this reason. *Id.* (quoting *Gadsden v. Unemployment Compensation Board of Review*, 479 A.2d 74, 76 (Pa. Cmwlth. 1984)).

Moreover, the court concluded that dismissal on this basis also violated due process:

> The Referee denied Claimant a continuance and decided her appeal on the basis of the Department's records. The Board reversed because Claimant did not appear at the Referee hearing to prove her eligibility, and then the Board refused to give Claimant an opportunity to explain her nonappearance. Fundamental due process requires notice and an opportunity to be heard, and this constitutional principle must inform the Department's procedural rules for unemployment compensation appeals.

*Id.* The court additionally noted that this due process violation was compounded by the fact that Claimant intended to present evidence at the referee's hearing, but was precluded from doing so by the denial of the continuance, and that the Board also denied her request for reconsideration without explanation. The court thus determined that, because of these circumstances, the Board had improperly used Regulation 101.107(b) "as a 'gotcha' to deprive Claimant of the benefits to which she was entitled," by raising the issue of her eligibility for benefits *sua sponte*. *Quigley*, 225 A.3d at 923.[7]

---

[7] The court also held that this reasoning applied equally to situations where a referee *sua sponte* rules that a claimant was ineligible for benefits, even though the Department determined that the claimant was eligible, and refuses to allow the claimant to present relevant evidence. *Id.* at 923 n. 13. As this appeal concerns the propriety of actions and a decision of *the Board*, we will not address this aspect of the Commonwealth Court's decision.

The court next considered the question of whether the Board committed an additional violation of Claimant's due process rights because its actions constituted an improper comingling of prosecutorial and adjudicatory functions, in violation of our decision in *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992) (holding that state medical licensing board had violated doctor's due process rights by initiating a prosecution of the doctor for an ethics violation and then subsequently adjudicating that violation and revoking his license). The court observed that, in most unemployment cases, the typical parties are the employers and the claimant; however, in the court's view, various provisions of the UC Law and its interpretative regulations make the Department a "silent party in every unemployment compensation case." *Id.* at 923 (citing 43 P.S. § 822 (requiring referees to "afford[] the parties *and the Department* reasonable opportunity for a fair hearing" and the Department to be notified of the time and place of the referee's hearing, as well as the referee's decision) and 34 Pa. Code § 101.90 (granting the Department the right to appeal to the Board) (emphasis original).

The court found that, after the service center had ruled Claimant to be eligible for benefits, Claimant could not have appealed that determination to the referee as she was not aggrieved by it; however, *the Department* could have appealed this eligibility determination if it desired, but chose not to do so. Likewise, the court noted that, if the Department disagreed with the referee's determination, it could have appealed the referee's decision to the Board; but, again, it did not do so. Thus, the court reasoned that the Board, by raising the issue on its own, "put itself in the role of the adversary, and in the case of self-employment, within the prosecutorial role of the Department. Such commingling of prosecutorial and adjudicatory functions is improper." *Id.* at 924.

The court remarked that, in *Lyness*, our Court emphasized that even the appearance of bias and partiality created when an administrative tribunal commingles prosecutorial and judicial functions – which it deemed the Board did in this case – to be sufficient to violate due process. In this regard, the court emphasized its perspective that the role of the Board is "solely adjudicatory," whereas, statutorily, the Department is the "'prosecutorial' actor" empowered to challenge any determination of a claimant's eligibility for benefits. *Id.* Thus, the court admonished that the Board "must not take on the Department's prosecutorial function by revisiting the referee's holding on benefit eligibility unless the Department raises that challenge." *Id.* The court regarded this separation to be of even greater importance, given that the Board is empowered by its governing regulations to review a decision of a referee even when no party has sought its review. *Id.* at 925 (quoting 34 Pa. Code § 101.101 ("Upon application to the Board . . ., *or on its own motion*, the Board may review an appeal which has been decided by a referee." (emphasis added))).

Because the Board never ruled on the issue Claimant had presented to it for appellate review — the computation of the amount of her weekly benefit rate — the court remanded to the Board to remand the case to a referee for consideration of this issue. *Quigley*, 225 A.3d at 925.

Judge Cohn Jubelirer dissented. She conceded that the UC Law has a remedial purpose and should be liberally construed; however, she disagreed with the majority that its construction of the Board's rules of procedure was justified as a result. Instead, in her view, the plain language of the UC Law granted the Board broad powers of review, chief of which was to be the ultimate fact finder in all unemployment proceedings. *Quigley*,

225 A.3d at 927 (Cohn Jubelirer, J., dissenting) (citing 43 P.S. § 824 ("The board shall have power, on its own motion, or on appeal, to remove, transfer, or review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the department or referee on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence.")). Consistent with this duty, Judge Cohn Jubelirer read the language of Regulation 101.87, quoted *supra*, and the similar language in Regulation 101.107(b), likewise quoted *supra*, as requiring the Board to consider all issues which the Department "ruled upon." From her perspective, the Board did not need the approval of the parties to consider any issues which the Department had decided, or which had been ruled on in the decision being appealed from, notwithstanding the additional language in both rules which allows the Board to consider issues "with the approval of the parties." *Id.* at 928.

Judge Cohn Jubelirer rejected the majority's conclusion that the Board *sua sponte* raised the issue of Claimant's eligibility. She regarded Claimant as having placed the issue of her eligibility in question whenever she appealed the question of the proper deduction of her income, because, under the four-part test discussed *supra* to determine if self-employment activity qualifies as a sideline business under Section 802(h), it is necessary to examine a claimant's income to see if it was "the primary source of her livelihood"; hence, in a benefit determination, claimant's income is considered both for purposes of eligibility and to determine the weekly rate of unemployment compensation. *Id.* at 929. Thus, in Judge Cohn Jubelirer's view, "an appeal as to the rate of

compensation, which requires a review of the claimant's self-employment income, necessarily implicates questions of eligibility and vice versa. An appeal as to one is an appeal as to both." *Id.*

Further, Judge Cohn Jubelirer interpreted the referee's decision as having "specifically held that Claimant was '**NOT DISQUALIFIED** from receiving compensation under [Section 802(h)].'" *Id.* at 930 (quoting Referee's Decision, *supra* (emphasis original)). Thus, she considered the referee to have "decided" or "ruled upon" this issue, thereby obligating the Board to review this issue under Regulations 101.87 and 101.107(b).

Turning to the majority's conclusions that the Board's actions deprived Claimant of fundamental due process, Judge Cohn Jubelirer rejected those as well. Regarding the failure of the referee to grant Claimant a continuance, Judge Cohn Jubelirer found that was the result of Claimant's own negligence, because she deemed Claimant not to have provided an adequate reason for her continuance request, nor did she follow up with the Department to inquire about the status of her request whenever she received no reply to her email. Further, Judge Cohn Jubelirer viewed the Board's actions as consistent with the plain language of 43 P.S. § 824 and Regulations 101.87 and 101.107(b); thus, in her assessment, the Board did not apply those sections in an overly technical and restrictive way so as to violate due process, as the majority concluded.

Lastly, Judge Cohn Jubelirer did not regard the Board's actions as contravening the tenets of *Lyness*, given that, from her perspective, Claimant put the issue of her eligibility before the referee and again before the Board because it was "inextricably intertwined" with the earnings issue she raised. *Quigley*, 225 A.3d at 933. Hence, Judge

Cohn Jubelirer discerned no appearance of bias or impropriety caused by the Board's consideration of this issue which would implicate *Lyness*.

Judge Wojcik joined Judge Cohn Jubelirer's dissent and authored his own separate dissenting opinion. Judge Wojcik criticized the majority for addressing the issue of the Board's authority at all, as he did not interpret Claimant's petition for review as raising that issue. On the merits, Judge Wojcik rejected the majority's conclusion that Claimant was denied due process; rather, because she chose to proceed *pro se*, he regarded her as having taken the risk that her continuance would not be granted, and that the referee would address the question of her eligibility for benefits, a possibility for which he found she received adequate notice. From Judge Wojcik's perspective, because Claimant did not appear at the referee hearing (and so did not give evidence on the issue), it was improper for the referee to find her to be eligible for benefits. Thus, he considered the Board to have acted properly to correct what he perceived to be the referee's error.

The Board sought further review, which we granted to consider whether, in reversing the Board's decision, the Commonwealth Court misapplied the UC Law and our Court's decision in *Lyness* by limiting the Board's scope of review to only the issue Claimant raised in her appeal to the Board. *Quigley v. UCBR,* 237 A.3d 410 (Pa. 2020) (order).

## II. Arguments of the Parties

We begin by considering the respective arguments of the parties on this question. The Board first argues that the Commonwealth Court mischaracterized the roles of the Department, the referees, and itself in the adjudication of UC claims, and then compounded its error by viewing the UC benefits claim review system as adversarial in nature. Rather, the Board explains that the UC system has always been intended as a

process of neutral fact-finding and adjudication, which allows for hearings to supplement the information in the Department's claim files. The Board highlights that the overall claim's process is intended to "operate quickly, simply, and efficiently." Board Brief at 14, 16 (quoting *Harkness v. UCBR*, 920 A.2d 162, 168 (Pa. 2007) (plurality) (allowing non-lawyers to represent employers at UC referee hearings, as such representation does not amount to the practice of law)).

The Board asserts that this speed and informality is necessary to effectuate the UC Law's remedial objective of "allow[ing] funds to be obtained by persons unemployed through no fault of their own at the earliest point that is administratively feasible." Board Brief at 16 (quoting *Harkness,* 920 A.2d at 168). Thus, the Department swiftly responds to initial claims based on the records and information submitted by employers and employees, which it then examines. The Board notes that this stage of the process is informal and non-adversarial, and does not involve a hearing.

The Board explains that, following the Department's initial determination, which is not in the nature of an adjudication, a claimant or employer may appeal to a UC referee, who reviews the Department's determinations *de novo* after providing the parties with notice of the issues and an opportunity to be heard. The Board maintains that, based on this review, the referee is empowered by 43 P.S. § 822 ("Where an appeal from the determination or revised determination, as the case may be, of the department is taken, a referee shall, after affording the parties and the department reasonable opportunity for a fair hearing, affirm, modify, or reverse such findings of fact and the determination or revised determination, as the case may be, of the department as to him shall appear just and proper.") to subsequently affirm, modify, or reverse the Department's findings of facts and overall determinations. The Board notes that Regulation 101.87 further delineates the referees' scope of review, by requiring him or her to "consider the issues expressly

ruled upon in the decision from which the appeal was filed." Board Brief at 16 (quoting Regulation 101.87). Next, after affording the parties notice, the referee holds a brief hearing at which interested parties are given the opportunity to be heard; and after which the referee issues a concise decision in layman's terms setting forth the reasoning for his or her determination, which claimants and employers may then appeal to the Board.

The Board asserts that the General Assembly endowed it with expansive powers of review over claims raised in an appeal from a referee decision with its enactment of Section 824, which confers on it the authority to *sua sponte* review "'any claim . . . decided by a referee' and, based upon the evidence of record or additional evidence, to affirm, modify, or reverse the determination of the Department or referee granting or denying benefits." *Id.* at 18 (quoting 43 P.S. § 824).

Further, the Board submits that, in *Peak v. UCBR*, 501 A.2d 1383 (Pa. 1985), our Court found that Section 824 authorizes the Board to act as the ultimate arbiter of fact in UC cases by supplanting a referee's factual findings and credibility determinations with its own, and, thus, acts as the "ultimate finder of fact." *Id.* at 1385. The Board highlights that, in fulfilling this responsibility as the ultimate fact-finder, and final arbiter of credibility, it proceeds with the benefit of a full record and employs numerous administrative law attorneys. The Board maintains that the Commonwealth Court's decision limiting its role and duties is inconsistent with Section 824 and this Court's recognition that it has been given unique and broad powers by the General Assembly to fulfill its statutory mandate.

Next, the Board asserts that it did not misuse its procedural regulations to expand the scope of Claimant's appeal, but, rather, complied with both its statutory authority and the text of Regulations 101.87 and 101.107 by reviewing all issues which had been considered by the referee and the Department, which included Claimant's eligibility. The Board emphasizes that, in the past, the Commonwealth Court has approved of this

process, as it has previously found that these regulations require the Board to "decide all of the issues the referee considered, *regardless of whether a party specifically raised the issue on appeal.*" Board Brief at 24 (quoting *Black Lick Trucking, Inc. v. UCBR*, 667 A.2d 454, 457 (Pa. Cmwlth. 1995)) (emphasis original). Thus, the Board argues that it has jurisdiction to rule on a claimant's eligibility regardless of whether an "adversarial party" raises that issue on appeal, and that, by imposing such a requirement in this case, the Commonwealth Court thwarted its obligation to review, *de novo*, the issues the referee ruled on in Claimant's appeal, including the referee's determination that Claimant was not disqualified from receiving UC benefits under Section 402(h). *Id.* at 25.

The Board insists that its obligation to conduct such a plenary review is rooted in its "ultimate responsibility to ensure that only those entitled to benefits receive them." *Id.* at 26. This responsibility derives in part from its asserted duty to protect the viability of the UC Compensation Fund[8], and ensure that only valid claims are paid from it. The Board asserts that requiring a party to raise the question of a claimant's eligibility in order for it to review whether this question was decided properly creates the risk that "a Department determination, based on minimal and possibly incompetent evidence, [will] stand as final, precluding review by the Board even if new evidence comes to light during the appeal process." *Id.* at 27. According to the Board, "[t]hat would allow an ineligible claimant to benefit from an error made by the Department in its review of limited facts in the first instance — a position that is anathema to the UC Law and the Board's 'super-adjudicatory' responsibilities" thereunder. *Id.*

---

[8] The "Unemployment Compensation Fund," 43 P.S. § 841, is a compulsory reserve fund statutorily established by the General Assembly in 1936 to ameliorate the deleterious effects of involuntary unemployment on the people of this Commonwealth. *Commonwealth v. Sun Ray Drug Company*, 61 A.2d 350, 351 (Pa. 1948). The fund is financed by excise taxes paid by employers and employees, as well as any penalties and interest assessed thereon. 43 P.S. § 841(a).

The Board next asserts that the majority erred in finding that it acted as both prosecutor and adjudicator in violation of *Lyness*, which, in the Board's view, is inapplicable in the realm of UC cases. In this vein, the Board notes that our Court has recognized that *Lyness* does not govern administrative processes that do not involve an agency engaging in a prosecutorial function. Board Brief at 29 (citing *Krupinski v. Vocational Technical School, East Northampton County*, 674 A.2d 683, 686 (Pa. 1996) (holding that *Lyness*'s prohibition against commingling of prosecutorial and adjudicative roles as a matter of due process was not implicated by a school's use of statutory procedures to discipline an employee, because such procedures did not involve a "prosecution," which our Court defined as "the institution and carrying on of a suit in a court of law or equity, to obtain some right, or to redress and punish some wrong," and the disciplinary action did not provide redress nor impose punishment)). *Id.* at 28. The Board argues that the UC benefits claim adjudication system is analogous to the educational disciplinary proceeding at issue in *Krupinski* in that it is not prosecutorial or disciplinary in nature, but, rather, is "a fact-finding system set up to administer the UC Law and distribute funds to those who qualify." *Id.* at 29. Thus, the Board contends *Lyness* has no application, given that the Department does not function in a prosecutorial capacity, nor does it mete out discipline or revoke licenses. The Board further disputes the Commonwealth Court's conclusion that it somehow assumed a prosecutorial role merely because it assessed Claimant's eligibility for UC benefits, again renewing its contention that it was empowered by Section 824 to "find its own facts, assess credibility, and resolve all issues addressed by or within the purview of the Department or a referee." *Id.* at 30.

The Board also rejects the Majority's conclusion that it violated Claimant's due process rights by denying her notice and the opportunity to be heard on the question of

eligibility. The Board contends that Claimant received adequate notice that her eligibility under Section 402(h) was at issue via the Department's determination, as well as in the Notice of Hearing for her appeal before the referee. The Board suggests that the Commonwealth Court has previously recognized that when the facts of record indicate that a claimant has been adequately apprised that a claim was at issue in proceedings before a referee, the claimant cannot later assert unfair surprise at the referee's adjudication of it. Board Brief at 32-33 (citing *Philadelphia Regional Port Authority v. UCBR*, 191 A.3d 68 (Pa. Cmwlth. 2018) (employer was not denied due process when Board affirmed the referee's decision upholding the grant of benefits based on the "Voluntary Layoff Proviso," 43 P.S. § 803(b), due to the fact that, though the UC service center determination did not specifically utilize this description of the statute, the service center, nevertheless, relied on that statutory provision in making its benefits determination)). Thus, the Board submits the Commonwealth Court's holding here conflicts with this precedent.

Moreover, the Board contends that Claimant was given an adequate opportunity to be heard through the scheduling of the hearing before the referee, but she did not avail herself of the opportunity to present evidence on the question of her eligibility because she did not attend, nor furnish an adequate reason to justify her non-appearance.

Finally, the Board argues that its determination that Claimant was ineligible for benefits was appropriate, as the only evidence before it which did not amount to uncorroborated hearsay was Claimant's admission that she owned and operated an independent business. To that end, the Board maintains that Claimant, by not appearing at the scheduled referee hearing, failed to meet her burden of proof by way of providing competent, admissible evidence.

Claimant responds by first arguing that our Court in *Lyness* emphasized that "even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen." Claimant Brief at 18 (quoting *Lyness*, 605 A.2d at 1207) (emphasis original). Claimant asserts that the Board's action of unilaterally deciding what issues it will consider in an appeal, regardless of the scope of the appeal, violates due process by commingling prosecutorial and adjudicatory functions in a manner which creates the appearance of partiality and bias. Consequently, in Claimant's view, when the Board reverses a decision on eligibility in the manner it did here, it is effectively placing itself in an adversary prosecutorial role which, in such cases, is properly that of the Department.

While Claimant concedes that the structure of the UC system itself does not inherently violate due process by commingling adjudicatory and prosecutorial functions, she asserts that the Board's actions in denying benefits on an issue not raised by any party threatens to eliminate the "walls of division" that are part of the architecture of the UC appeals process and thereby create the threat or appearance of bias. *Id.* at 19.

Claimant asserts that, contrary to the Board's position, the UC appeals system is an adversarial system, as evidenced by the fact that the hearing process before the referee entails advising a claimant of his or her rights, including the right to chosen representation and to subpoena and cross-examine witnesses, and allocates to the litigants the burden of proof on various aspects of establishing a valid claim for UC benefits. Claimant avers that the Board's description of the process creates a false impression that it is entirely informal in nature, akin to a mere "gathering of associates." Claimant Brief at 21. Claimant also highlights that finality attaches to all decisions of the Board or referees when not appealed. Thus, in Claimant's view, the UC process, while

not possessing all of the characteristics of a trial, nevertheless "carr[ies] all the trappings of adversarial proceedings." *Id.* at 22.

Claimant posits that *Wing v. UCBR*, 436 A.2d 179 (Pa. 1981) supports this contention, as, therein, our Court explained:

> An adversary system is created whenever the burden of proof is allocated to either party. Moreover, in Anglo-American law, the adversary system is highly lauded and considered the best means of bringing truth to light. The waiver rule is perfectly appropriate in unemployment compensation proceedings.

Claimant Brief at 22 (quoting *Wing*, 436 A.2d at 181).

Claimant suggests that this Court's recognition in *Wing* that the waiver doctrine applies to UC matters demonstrates how the Board's application of Regulation 101.107 in a manner which permits it to consider any issue it deems pertinent could lead to an absurd result – namely, that the Board may, on its own volition, review issues which have not been raised by the parties, but may also simultaneously deem an issue which a party *has* presented to be waived, if he or she did not expressly raise it before the lower tribunal.

Claimant also contends that the Board's reliance on *Peak*, *supra*, as granting it the broad power to raise and consider any issue, of its own volition, is misplaced, as the holding therein pertained only to the Board's ability to act as ultimate finder of *fact* and to rectify *factual* disputes. Claimant rejects the Board's assertion that it has the power to act as a "super adjudicator" over questions of law, and, thus, she propounds that it was improper for the Board to interject the legal issue regarding her eligibility for benefits into her appeal. Claimant Brief at 24.

Claimant maintains that several aspects of the UC appeals process also repudiate the Department's assumption of a prosecutorial role. Claimant points out that, while a typical unemployment appeal involves two parties — a claimant and an employer — as the Commonwealth Court found, the Department remains a silent party in all UC cases.

Claimant avers this is evidenced by the fact that Section 822 requires the Department to be given notice of the time and place of a referee's hearing, and also mandates that the Board be notified of the referee's decision and the reasons for it.  Further, Claimant points out that the Board's regulations specifically empower the Department to initiate an appeal from any decision issued by a referee or the Board.  *Id.* at 25 (citing 34 Pa. Code § 101.90 (granting the Department 30 days to file an appeal of the Board's decision to the Commonwealth Court)).  Claimant notes that the Department will appeal a Board decision whenever it deems the Board to have wrongly applied the UC Law.  *Id.* (citing *Department of Labor and Industry, Office of Unemployment Benefits Policy v. UCBR*, 131 A.3d 597 (Pa. Cmwlth. 2016) (appeal from Board's determination that claimant had "good cause" under the UC Law for not registering for online job search services).  Claimant argues that these rights of the Department, along with its statutorily conferred power to impose financial penalties on a claimant who makes false statements to receive unemployment compensation, evidences that the Department plays a prosecutorial role in the UC appeals process.  Claimant maintains that, by *sua sponte* raising the issue of her eligibility, the Board essentially stepped into the Department's prosecutorial role, and impinged on her due process rights by depriving her of an impartial arbiter.

Claimant also rejects the Board's position that it must raise issues *sua sponte* in the interest of protecting the UC Compensation Fund, suggesting that our Court should repudiate the Board's position that its duty to protect the fund may override the Board's obligation to act as an impartial adjudicator.  Claimant asserts that the Board's role as a "protector of the fund" merely provides it with the ability to investigate facts and create a complete factual record, but it does not endow it with the ability to raise issues of law without limitation. Claimant Brief at 29.  Claimant argues that the Board's attempt to wield its responsibility to protect the fund as justification to raise an undisputed legal issue *sua*

*sponte* "implies the 'possibility of bias under Pennsylvania law [] sufficient to raise the red flag of protection offered by the procedural guaranty of due process.'" *Id.* at 34 (quoting *Lyness*, 605 A.2d at 1208) (alterations original). Moreover, Claimant contends that, just as in *Lyness*, the fatal defect here lies in the Board's administrative regulations and its loose interpretation of them to claim the right to *sua sponte* raise legal issues not appealed by the parties. Claimant asserts that the Board's interpretation should not be allowed to stand as a matter of due process.

Claimant observes that *sua sponte* review of issues in the context of administrative proceedings has also been found by our Court to violate due process whenever parties are not provided with adequate notice and an opportunity to be heard on those issues. Claimant Brief at 35 (citing *Pa. Bankers Association v. Pa. Department of Banking*, 956 A.2d 956, 965 (Pa. 2008) (holding that the Department of Banking deprived a bank of due process when it granted the bank intervenor status in an administrative proceeding before the Department, but later rescinded that status on the basis of the bank's alleged lack of standing without providing it with notice and a hearing on this question)). Claimant argues that the Board's *sua sponte* reconsideration of her eligibility denied her notice and the opportunity to be heard on this issue, because she never was apprised that she needed to defend her eligibility determination before the Board, nor offered the opportunity to furnish additional proof on this issue.

Moreover, Claimant highlights that the Board's employment of such an expansive and fundamentally unfair review process will deter claimants of modest means, who usually cannot afford the assistance of counsel due to the financial hardship caused by their unemployment, from pursuing narrow appeals, such as with respect to the calculation of benefits, because they will assess the risk of losing a favorable eligibility determination to outweigh the amount of additional compensation they would gain by

pursuing the appeal. Claimant suggests that, if the Board is going to conduct this type of expansive review, it ought to include language in its determinations and notices to claimants warning them that a narrow appeal may place all issues in controversy, including those which were adjudicated in a claimant's favor in a prior stage of the UC proceedings.

Finally, Claimant disputes the Board's contention that the mere inclusion of a reference to Section 402(h) in the referee hearing notice as an issue to be decided was sufficient notice that her eligibility would be considered. She argues that the reference to this statutory provision was vague, because Section 402(h) implicates several distinct legal issues: whether a claimant is engaged in self-employment; whether such employment amounts to a sideline business; and what the net earnings of such activity were for purposes of remuneration. Claimant emphasizes that the referee's decision indicated that the only issue before her was whether Claimant's "income from self-employment [was] deductible from UC, and, if so, to what extent." Claimant Brief at 47. In sum, she maintains such inadequate notice of the scope of issues the Board would consider violated due process and, thus, its eligibility determination is void.

### III. Analysis

As this appeal presents issues regarding the interpretation of the UC Law and its administrative regulations, which involve pure questions of law, our scope of review is plenary, and our standard of review is non-deferential. *Lowman v. UCBR*, 235 A.3d 278, 289 (Pa. 2020). As a general matter, our Court interprets the UC Law, and, correspondingly, regulations promulgated by Commonwealth administrative agencies to enforce and implement it, liberally in order to effectuate the law's manifest remedial purpose, which the General Assembly has indicated is of paramount importance through a statement of policy which it incorporated into this law over eight decades ago:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752; *Gillins v. UCBR*, 633 A.2d 1150, 1156 (Pa. 1993) (statement of legislative policy in Section 752 must be considered in interpreting all other provisions of UC Law). With these guiding principles in mind, we turn to the question of whether the Board was empowered under the UC Law, or its regulations, to raise *sua sponte* the legal issue of Claimant's eligibility for UC benefits in her appeal from the referee's decision.

Briefly, by way of background, the three-member Board, which is appointed by the Governor with the advice and consent of the Senate, is a statutorily created administrative board within the Department. 43 P.S. § 763(a). It is empowered "to hear appeals arising from claims for compensation, adopt, amend or rescind such rules of procedure, undertake such investigations, and take such action required for the hearing and disposition of appeals as it deems necessary and consistent with [the UC Law]." *Id.* § 763(d).

The Board's specific statutory authority with respect to adjudicating appeals from a decision of a referee is enumerated in Section 824 of the UC Law, which provides:

> The board shall have power, on its own motion, or on appeal, to remove, transfer, or review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the department or referee on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence. When any claim pending before a referee is removed or transferred to the board, the board shall afford the parties and the department reasonable opportunity for a fair hearing. The parties and the department shall be duly notified of the board's final decision and the reasons therefor. A complete record shall be kept of each case heard before the board. All testimony at any hearing before the board, whether on appeal or otherwise, shall be taken by a reporter and recording device. An unabridged transcript and audio recording of the testimony shall be made available, at cost if not used for unemployment compensation purposes or a subsequent appeal, to the parties and their attorneys or other representatives upon written request to the board.

43 P.S. § 824.

Thus, this section, when read in accordance with the plain meaning of its terms as we must, *see* 1 Pa.C.S. § 1921; *Gavin v. Loeffelbein*, 205 A.3d 1209, 1221 (Pa. 2019), establishes that the Board's authority to hear an appeal from a decision of a referee is discretionary, and that, when the Board decides to consider an appeal of a referee's decision, it may "affirm, modify, or reverse" it "on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence." 43 P.S. § 824. This section, however, is silent as to what specific legal issues the Board can consider once it has allowed an appeal from a referee's decision.

As recounted above, the Board has asserted that, because Section 824 grants it the authority to "review any claim . . . decided by a referee" this permits it to, *sua sponte,*

consider all legal issues implicated in the proceedings before the referee, even if they were not raised by a party during those proceedings. We disagree.

The term "claim" is not independently defined by the UC Law; however, it is axiomatic that, in construing the meaning of a term in a particular statutory provision, we consider how that term is utilized by other statutes within an overall statutory framework that pertains to the same subject matter. *Snyder Brothers v. PUC*, 198 A.3d 1056, 1076 (Pa. 2018). Accordingly, we read the term "claim," as used in Section 824, consistent with its usage in Section 763(d), quoted above, as both provisions concern the authority of the Board to conduct appellate review, and, thus, we construe "claim" to mean the overall "claim for compensation" being pursued by the unemployed individual – *i.e.,* the case itself, not a particular claim of legal or factual error as that term is used in the conventional appellate context. Hence, Section 824 establishes the Board's *right* to conduct appellate review of a claim for unemployment compensation; however, it does not define the *scope* of such review – that is, the legal issues which the Board is permitted to consider when hearing an appeal by a party. *See generally Pennsylvania State Police v. Pennsylvania State Troopers Association*, 656 A.2d 83, 85 n.4 (Pa. 1995) (noting that, as a general principle of appellate review, the scope of review refers to "the *matters* (or 'what') the appellate tribunal is permitted to examine," which includes the questions the appellate tribunal may review (emphasis original and internal quotation marks omitted)).

Contrary to the Board's contention, our decision in *Peak*, *supra*, does not support its position. In that case, our Court considered whether the Board was empowered by Section 824 to substitute its own credibility determinations for that of the referee regarding conflicting witness testimony on a disputed issue of fact – namely, whether the claimant had engaged in willful misconduct by disobeying an employer's rule not to take a lunch break whenever it would result in the workplace being unattended. The referee resolved

the conflicting testimony in the evidentiary record in favor of the claimant, but the Board, upon reviewing the same evidence, reached the contrary conclusion that the employee had disobeyed the employer's instructions. In upholding the Board, we concluded that Section 824 confers authority on the Board to be "the ultimate finder of fact with power to substitute its judgment for that of its referees on disputed facts." *Peak*, 501 A.2d at 1385. However, we did not hold therein that the Board has the same plenary power under Section 824 to make such *de novo* rulings concerning issues of law.

Instead, we find the Board's authority to consider particular issues of law in an appeal from a referee's decision derives from its own duly promulgated procedural rule specifically delineating the issues it will consider in such appeals – Regulation 101.107 – which provides:

> **§ 101.107. Issues considered on appeal.**
>
> (a) In connection with the consideration of an appeal to the Board from the decision of a referee, the Board may consider an issue in the case though not expressly ruled upon in the decision of the Department or the referee and though not previously raised in the claim or appeal proceedings. However, issues not previously considered or raised will not be considered by the Board, either upon application for, or in the determination of an appeal unless the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.
>
> (b) The Board shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case, with the approval of the parties, may be determined though not expressly ruled upon or indicated in the notice of hearing, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

34 Pa. Code § 101.107 ("Regulation 101.107").[9]

As discussed *supra*, the Board argues that the referee "expressly ruled upon" the issue of Claimant's eligibility in her decision, and, as a result, it was authorized under the first clause of subsection (b) of this rule to consider this question in adjudicating Claimant's appeal.[10] Our review compels us to reject this assertion, inasmuch as we do not interpret the referee's decision as having "expressly ruled" on an issue regarding Claimant's eligibility. As detailed above, neither Claimant's employer nor the Department ever challenged the eligibility of Claimant to receive benefits because of self-employment before the referee. In fact, the Department expressly found that she *was* eligible and not engaged in self-employment by virtue of her sideline business; hence, there was, as the Commonwealth Court below found, no active controversy regarding this issue for the referee to decide.

Indeed, the referee herself described the Department's decision as confirming Claimant's eligibility, and she clearly stated that the sole issue she was considering in her decision was whether "the claimant's *income from self-employment* [was] deductible from UC, and, if so, to what extent?" Referee's Decision, 5/11/17, at 2 (R.R. at 40) (emphasis added). Further, after reciting the fact that the Department had determined that "the

---

[9] We find Regulation 101.87, entitled "Issues considered on original appeal," discussed above, to be inapplicable in delineating the parameters of the Board's scope of review of the legal issues in an appeal to it from a referee's decision, given that, by its plain terms, it governs an appeal taken from the Department's initial decision to a referee. *See* 34 Pa. Code § 101.87 ("When an appeal is taken from a decision of the Department . . . ."). Here, the Board was reviewing Claimant's appeal *from* the referee's decision.

[10] This view of the referee's decision is adopted by Justices Donohue and Mundy in their respective dissenting opinions.

claimant's sole proprietorship did not disqualify her under Section [802(h)]," the referee stated "[t]he question remains as to whether income from it is deductible from UC." *Id.*

Thus, guided by the referee's own explanation of her decision-making process, and contrary to the view of the Board and the dissenting Justices, we interpret the referee's declaration that "Claimant is not disqualified from receiving compensation under [Section 802(h)]," *id.* at 3 (emphasis deleted), to have been merely a restatement of the *Department's* resolution of this issue, not the referee's own independent reasoned decision regarding this question, as she herself indicated that she did not consider that issue to be before her and did not otherwise indicate that she was making her own determination in this regard. Therefore, as eligibility was not decided by the referee, and

thus not expressly "ruled upon,"[11] the first clause of subsection (b) of Regulation 101.107

did not authorize the Board to consider this issue.[12]

---

[11] It is this lack of an express ruling by the referee on a disputed issue which differentiates this case from *Jordan v. UCBR*, 547 A.2d 811 (Pa. Cmwlth. 1988), cited by Justice Mundy in her dissent. *See* Dissenting Opinion (Mundy, J.) at 5-6. In *Jordan*, the Department's administrative predecessor, the Office of Employment Security, ruled that the complainant was ineligible for benefits because he had started a sideline business in contravention of his employer's rules, and, thus, was ineligible under Section 802(e) in light of this perceived willful misconduct. The Office of Employment Security also found that the claimant was ineligible under Section 802(h).

The claimant appealed both determinations to a referee, and the referee ruled that claimant was eligible under Section 802(e), but ineligible under Section 802(h). Claimant appealed the ineligibility determination under Section 802(h), but indicated in his appeal that he was not appealing that aspect of the referee's ruling that he was eligible under Section 802(e). Nevertheless, the Board found that, while claimant was eligible under Section 802(h), he was ineligible under Section 802(e). Claimant appealed to the Commonwealth Court, arguing that the Board did not have jurisdiction to consider this issue as he had not raised it. The Commonwealth Court disagreed and noted that, under Regulation 101.107(b), the Board may consider issues expressly ruled on in a referee's decision, and it therefore could address the issue of claimant's eligibility under Section 802(e) as it had been "expressly ruled upon in the referee's decision." 547 A.2d at 813. Thus, unlike in the present case, the referee in *Jordan* rendered an express ruling on a disputed issue. In the instant matter, there was no dispute between the Department and Claimant over her eligibility; therefore, the referee was not required to, nor did she, "expressly rule[] upon" a disputed issue.

Additionally, we must respectfully reject Justice Mundy's assertion that, because Regulation 101.87 requires the referee to "consider the issues expressly ruled upon in the decision from which the appeal was filed," 35 Pa. Code 101.87, this preserves an issue for review by the Board even in the absence of an express ruling by the referee on the issue. *See* Dissenting Opinion (Mundy, J.) at 4 n.5. In our view, Regulation 101.107(b) does not provide that an issue is preserved for the Board's review merely because the referee may have "considered" the issue. To "consider" is commonly understood to mean "[t]o think carefully about," American Heritage Dictionary 189 (4th ed. 2001), or, as Justice Mundy characterizes it, to "examine." Dissenting Opinion (Mundy, J.) at 4 n.5. By contrast, Rule 101.107(b) requires that, to be preserved for the Board's review, the referee must have "expressly ruled" on the issue. We are not at liberty to disregard this clear language. Here, the referee may have "considered" the Department's resolution of the eligibility question, but she did not expressly rule on it.

[12] In her dissenting opinion, Justice Donohue posits that Claimant failed to carry her burden of proof on the question of her eligibility for benefits due to her failure to appear

The remainder of subsection (b) allows the Board to consider "any issue in the case" but *only* "with the approval of the parties." 34 Pa. Code § 101.107(b). Clearly Claimant, as the sole party in the appeal (given the Department's nonparticipation), did not approve of having the issue of her eligibility revisited by the Board.

Turning to subsection (a) of Regulation 101.107, it allows the Board to "consider an issue in the case though not expressly ruled upon in the decision of the Department or the referee and . . . not previously raised in the claim or appeal proceedings," but *only* if such a ruling does not cause "prejudice to any party." 34 Pa. Code § 101.107(a). Here, as Claimant details, the Board's *sua sponte* consideration of her eligibility caused her

---

at the referee's hearing and to present evidence on this question. Respectfully, we disagree. As detailed above, at the time of her application, Claimant submitted an extensive questionnaire detailing the nature of her sideline business, freelance writing; the fact that her engagement in this business predated the loss of her full time job at the Philadelphia Area Cooperative Alliance and continued in the same manner at the time of her application; her attestation that the freelancing business would not constitute her primary source of income, nor render her unavailable for full time work; and that her income from that business never exceeded that which she earned at her full time job. Claimant Questionnaire, 4/11/17 (R.R. at 6). In support thereof, she also separately provided a copy of Schedule C of her 2016 federal tax return showing the income she had received from this sideline business during that year. Claimant acknowledged in filling out this questionnaire the penalties for making false statements thereon. *Id.* The Department further confirmed these details in a phone interview with Claimant. *Id.* Notably, the accuracy and veracity of this information, which established Claimant's eligibility for unemployment compensation under Section 802(e), *see Moskos*, *supra*, was never challenged by the Department, her employer, or the referee. Hence, in our view, it formed a proper basis for the Department's eligibility determination, and, given that there was no dispute as to the accuracy of this information, we fail to discern how Claimant's appearance at the referee's hearing was necessary to (re)establish her eligibility, which, again, was undisputed. Both the Department and the referee were entitled to rely on information contained in the Department's own records. *See* 34 Pa. Code § 101.51 ("If a party notified of the date, hour and place of a hearing fails to attend a hearing without proper cause, the hearing may be held in his absence. In the absence of all parties, the decision may be based upon the pertinent available records.").

substantial prejudice by depriving her of notice and the opportunity to be heard on this question.

As our Court has emphasized, "the basic tenets of due process apply with equal force in administrative proceedings as they do in judicial proceedings . . . [I]t is fundamental that the key principles underpinning due process include the requirements of notice and an opportunity to be heard." *Pa. Bankers Association v. Pa. Department of Banking*, 956 A.2d 956, 965 (Pa. 2008); *see also Vann v. UCBR*, 494 A.2d 1081 (Pa. 1985) (Board's procedural rules regarding appeals must comport with the guarantees of fundamental due process). Adequate notice in this context includes the "right to notice of the issues to be decided, and an opportunity to offer evidence in furtherance of such issues." *Pa. Bankers Association,* 956 A.2d at 965. The Board afforded Claimant neither notice that it would be considering the issue of her eligibility for benefits, nor the opportunity to be heard thereon. Claimant was not apprised after she filed her appeal, in which she questioned the *amount* of her benefits, that the Board would address her *eligibility* for benefits, an issue that had already been decided in her favor by the Department, and which neither the Department nor her employer contested before the Board. Given the seemingly settled nature of this question, and the lack of any evident dispute over the question of her eligibility, we find that no reasonable person in her position would be forewarned that the Board might reassess her eligibility.

Likewise, Claimant was not given a hearing by the Board on this question after it elected, *sua sponte*, to decide this issue, and terminate her UC benefits on this basis. The Board then compounded the prejudice by denying Claimant's motion for reconsideration or remand, thereby depriving her of her only chance to present additional

evidence and argument on this question, given that the Board evidently deemed the records relied on by the Department and the referee insufficient to establish her eligibility. Accordingly, we find that, because the Board's actions in this matter were prejudicial to Claimant, the Board cannot avail itself of Regulation 101.107(b) as justification for its actions.

For all of the aforementioned reasons, we find the Board erred in reversing Claimant's award of unemployment compensation, and so affirm the order of the Commonwealth Court.[13][14] Jurisdiction relinquished.

Chief Justice Baer and Justices Saylor, Dougherty and Wecht join the opinion.

---

[13] Given the circumstances of this case, we agree with the Board that our decision in *Lyness* is not implicated. Therein, the State Board of Medical Education and Licensure, acting on information provided by its own prosecuting attorney as the result of an investigation, commenced a disciplinary proceeding against a doctor for sexual misconduct, after finding probable cause existed to initiate such a process. The Licensure Board later voted to revoke the doctor's license as the result of its investigation. Our Court regarded the Licensure Board's actions as constituting "an unconstitutional intermingling of the prosecutorial and adjudicatory functions." *Lyness*, 605 A.2d at 1210. The key factor in our decision was the fact that the Licensure Board members who made the initial decision to prosecute the case were also "significantly involved" in its adjudication. *Id.* Thus, we regarded the potential bias, whether actual or perceived, created by the Licensure Board acting in the capacity of both prosecutor and judge in determining the doctor's professional fate, to be violative of his due process rights secured by our Commonwealth's Constitution. By contrast, the Board in this matter was not involved at all in the administrative decision-making process involving Claimant until she lodged her appeal from the referee's decision.

However, we express no opinion as to whether *Lyness* could be implicated in situations unlike the present matter, such as where the Board decides to utilize the authority conferred on it by Section 763(d) to investigate a UC claim, and then later adjudicates an appeal involving that claim. Likewise, we do not address whether *Lyness* could be implicated where the Board, on its own initiative, proceeds under Section 824 to *sua sponte* review a claim pending before a referee, or under 34 Pa. Code § 101.101 to *sua sponte* review a claim after the referee has rendered a decision even though no party has appealed, and thus acts outside the conventional adversarial framework for the presentation of appellate issues to the Board. *See generally Wing v. UCBR*, 436 A.2d 179 (Pa. 1981) (discussing adversarial system in UC proceedings).

[14] We reject the Board's argument that its asserted duty to protect the financial health of the UC Compensation Fund, by ensuring that only valid UC claims are paid, empowers it to *sua sponte* raise legal issues in a party's appeal from a referee's decision. The Board's asserted duty, while perhaps laudable, is not free-standing authority for it to conduct appellate review of referee's decisions unmoored from the advocacy of parties or principles of due process; rather, its appellate authority derives only from its enabling statutes, and the regulations it has promulgated pursuant thereto to govern appeals to the Board.

Justice Dougherty files a concurring opinion.

Justice Wecht files a concurring opinion.

Justice Donohue files a dissenting opinion.

Justice Mundy files a dissenting opinion in which Justice Donohue joins.